**In re Petition for DISCIPLINARY ACTION AGAINST David L. BREHMER, Attorney at Law of the State of Minnesota.**

No. C3–00–529.

Supreme Court of Minnesota.

Jan. 4, 2001.

Edward J. Cleary, Director, Timothy M. Burke, Office of the Lawyers Professional Responsibility, St. Paul, MN, Attorneys for Appellant.

Philip G. Villaume, Philip G. Villaume and Associates, Edina, MN, Attorney for Respondent.

## OPINION

PER CURIAM.

On March 20, 2000, the Director of the Office of Lawyers Professional Responsibility served the respondent, David L. Brehmer with a petition for disciplinary action alleging that Brehmer had not complied with the conditions of his probation because he committed acts of professional misconduct while on probation. Brehmer failed to respond within the 20–day period allowed for responses. As a result, we ordered that the allegations contained in the petition were deemed admitted, and oral arguments were scheduled for June 1, 2000. Written proposals for appropriate discipline were due to us by May 5, 2000, but on May 4, 2000, Brehmer filed a motion requesting that the May 5 deadline be extended. We extended the deadline to May 15, 2000.

On May 15, 2000, Brehmer filed a motion requesting that we vacate the default order deeming admitted the allegations in the petition for disciplinary action or, in the alternative, to allow Brehmer to present mitigation evidence at oral argument. The Director opposed the motion, but asked, in the alternative, that we assign the matter to a referee for an evidentiary hearing. The Director also asked us to temporarily suspend Brehmer until final resolution of this matter.

On May 24, 2000, we struck the scheduled oral argument from our calendar, and referred the matter to a referee to make findings of fact, conclusions of law, and recommendations for disposition. The hearing was limited to an inquiry into any additional allegations of misconduct not contained in the petition and the presence of any mitigating or aggravating factors. In addition, we denied Brehmer's request to reverse the default order deeming the allegations of the March 16 petition admitted, and we denied the Director's request for temporary suspension, and instead ordered that Brehmer remain on supervised probation until resolution of this matter.

On June 29, 2000, the Director filed a supplementary petition for disciplinary action alleging that Brehmer committed acts of professional misconduct in addition to those alleged in the Director's March 16, 2000 petition. Brehmer filed an answer on July 27, 2000, and a hearing was held on July 28, 2000, before the referee. On August 10, 2000, the referee issued his recommendation for discipline finding that Brehmer had committed the acts alleged in both of the Director's petitions and concluding that Brehmer's conduct constituted multiple violations of Minn.R.Prof. Conduct 1.1, 1.3, 1.4, 1.15, 1.16(d), 3.1, 3.2, 3.3(a)(1), 3.4(c), 3.4(d), 3.5(g), 4.1, 5.5(a), 8.1(a)(3), 8.4(c), and 8.4(d). The referee also concluded that Brehmer violated the terms of his probation and Rule 25 of the Rules of Lawyers Professional Responsibility (RLPR). The referee rejected Brehmer's mitigation claims of psychological disorder and other family circumstances and recommended a disciplinary sanction of indefinite suspension for a minimum of 2 years, compliance with Rule 26, RLPR, and payment of $900 to the Director in costs plus disbursements under Rule 24, RLPR.

David L. Brehmer was admitted to practice law on October 27, 1989, and he worked as a law clerk for a law firm until

January 1990. Brehmer left that firm to work as a law clerk for several Hennepin County judges. Then, in August 1992, Brehmer founded his own law office where until recently he practiced primarily criminal, family, and immigration law.

Brehmer has been sanctioned six times since 1995 for repeated violations of the Minn.R.Prof. Conduct. Brehmer was first issued an admonition on September 14, 1995, for failing to timely submit a requested informational statement, failing to inform his client that the client's case would be dismissed if an informational statement was not filed, and for withdrawing from representation without telling his client that the client's case was already beyond the dismissal deadline for filing the statement. Then, on February 23, 1996, Brehmer was issued two admonitions. The first was for failing to clearly communicate his billing practices to his client, failing to return his client's phone calls, failing to abide by his client's decision regarding litigation strategy, failing to communicate adequately, and failing to pursue his client's matter diligently. The second was for failing to pursue his client's matter diligently, failing to return his client's telephone calls, failing to communicate to the client clearly regarding the status of the client's claim, and asserting a lien on the claim for fees in an unrelated matter.

Brehmer's fourth sanction was issued on September 24, 1997, when he was placed on private probation for 2 years because he failed to pursue his clients' matters and because he failed to communicate with his clients. On May 14, 1999, Brehmer was sanctioned a fifth time when he was admonished for pursuing frivolous litigation, failing to file a court-ordered reply brief and a written response addressing sanctions, and failing to draft appellate briefs pursuant to court rules. Brehmer's sixth sanction was issued on May 24, 1999, when his private probation was extended because he failed to handle a client's case with the required thoroughness and prepa-

ration, failed to handle a client's case in a timely fashion, failed to communicate adequately with the client, and failed to identify open cases on the open case inventory he was required to provide monthly to his probation supervisor.

On August 5, 1999, the Director began investigating new complaints filed against Brehmer by his former clients. Brehmer did not respond to any of the Director's requests for information, so on March 20, 2000, the Director served Brehmer with a petition for disciplinary sanctions. The petition consisted of new allegations of misconduct, violations of the terms of Brehmer's probation, and failure to cooperate fully with the Director's office in its efforts (1) to investigate complaints against Brehmer and (2) to monitor Brehmer's compliance with the terms of his probation. The Director's March 2000 petition and the supplemental June 29, 2000 petition provided the basis for this case and alleged various acts of misconduct related to the following client matters and probation violations. We deemed the following acts of misconduct admitted, all of which were contained in the Director's March 2000 petition.

*The Green Matter*

The first count of misconduct involved Brehmer's representation of A.G. in a child custody and visitation proceeding during November and December 1998. The motion papers requested an increase in Green's custody and visitation rights, but Brehmer's argument at the hearing was that custody should be granted to Green's parents. A prior court order precluded Green's parents from an award of custody rights, but Brehmer continued to argue this theory of the case, and he presented witnesses to establish the appropriateness of Green's parents as custodians. Even though the district court advised Brehmer that it would not grant custodial rights to Green's parents, Brehmer continued to argue this frivolous theory.

The referee also noted that the district court found that Brehmer and his client

attempted to perpetrate fraud on the court by making false statements. At a pretrial scheduling conference, Brehmer denied the existence of medical records, including those specifically related to his client's drug-related hospitalizations. During trial, opposing counsel discovered those records, but the trial record is unclear whether Brehmer actually knew that the medical records existed. Brehmer's client then denied that the medical records were hers because they were not written in her handwriting and because there are other people living in the area with the same name.

Moreover, Brehmer violated the district court's orders. The court ordered that all applications for any kind of relief be brought before Judge Patrice Sutherland. But Brehmer drafted documents seeking *in forma pauperis* status for his client and submitted the documents to the signing judge-who was not Judge Sutherland. The signing judge granted the motion, but it was later vacated after the signing judge became aware of Brehmer's deception. Even after being reminded that all requests for relief were required to be brought before Judge Sutherland, Brehmer submitted a second *in forma pauperis* request to yet another signing judge.

In addition, Brehmer did not comply with the district court's orders regarding deadlines for providing witness and exhibit lists. Brehmer also attempted to add witnesses during the hearing. Many of these witnesses were to provide cumulative or irrelevant testimony. When the court sustained objections prohibiting testimony from these witnesses, Brehmer acted belligerently and was rude and insulting to the court and opposing counsel. Brehmer was not prepared for trial, and he repeatedly violated the sequestration order that was in effect during the hearing by beginning direct examination with a synopsis of the previous witnesses' testimony. Brehmer also assisted Green's attempt to hide her children by advising Green that her *ex parte* order for protection from the custodial father authorized Green to hide her children from their custodial father.

After the hearing the district court found Brehmer's conduct was improper, and he was sanctioned $48,133.65. Brehmer appealed on both his and his client's behalf, but he failed to file a proper statement of the case with the notice of appeal. Brehmer did not order a transcript within the required 10 days after the appeal was filed. The court extended the deadline, but Brehmer did not reply or comply with the new deadline, and the court of appeals dismissed the appeal. Brehmer's subsequent motion to reinstate the appeal was denied, and Brehmer's sanctions remain unpaid.

*The Mattingly Matter*

The second count of misconduct involved Brehmer's representation of Mark and Diane Mattingly during April 1997, in a dispute arising out of their purchase of a house in Wisconsin. Brehmer was not, and is not, licensed to practice law in Wisconsin,[1] but he accepted a $2,500 retainer and then attempted to commence the action by serving the summons and complaint on the defendants. Under Wis.Stat. § 801.02 (1996), the summons and complaint must first be filed with the clerk of court. Because the lawsuit was commenced improperly, two of the defendants filed a motion to dismiss. The district court did not grant the motion, but instead issued an order in July 1997, setting new deadlines for Brehmer to serve the summons and complaint properly. Brehmer failed to meet these new deadlines, and the same two defendants again filed a motion to dismiss and an amended motion to dismiss. Brehmer did not respond, and those two defendants were eventually dismissed.

In addition, during the time when Brehmer associated with local counsel, he failed

---

1. Although Brehmer is not licensed to practice law in Wisconsin, he retained local counsel in September 1997. The record does not indicate whether counsel was or is licensed to practice in Wisconsin.

to timely respond to the remaining defendants' requests for admissions and interrogatories. Brehmer also failed to correctly identify expert witnesses. He failed to properly respond to a motion to compel discovery, and when he finally did respond to the defendants' requests for admissions and interrogatories, the answers were not signed under oath. Brehmer failed to meet other discovery deadlines and failed to attend the depositions of expert witnesses. On June 12, 1998, local counsel filed a motion to withdraw from representation, and Brehmer did not retain other local counsel.

On August 28, 1998, the court granted the remaining defendants' motions to dismiss because Brehmer failed to comply with the court's discovery orders, and because Brehmer exhibited egregious behavior in general. In a separate order, the court stated that Brehmer's misconduct was consistent throughout the case, and he repeatedly violated the discovery rules. The Mattinglys paid Brehmer $1,675 for his representation, but he never provided the Mattinglys with a bill or an accounting of the retainer funds they paid to him.

*The Williams Matters*

The third count of misconduct involved Brehmer's representation of Dennis Williams in 1998. Brehmer was hired to assist Williams in an action he had commenced as a *pro se* litigant. During discovery, Brehmer failed to provide discovery responses, and when opposing counsel filed a motion to compel discovery, Brehmer failed to notify Williams or send Williams copies of the motion. Brehmer also failed to inform Williams of the hearing date for the motion.

Brehmer filed a motion to withdraw in December 1998, while Williams' summary judgment motion was pending. Brehmer failed to serve the required notice of his motion on Williams, and he failed to inform Williams of the motion or the hearing date. Brehmer stated in his motion that his lack of communication with Williams resulted from Williams' unavailability, and Breh-

mer's motion to withdraw was granted. Brehmer billed Williams, but Brehmer failed to substantiate his billing.

The fourth count of misconduct involved Brehmer's representation of Dennis Williams in another matter beginning in February 1996. Williams retained Brehmer to represent him in an action against the City of Minneapolis in a wrongful arrest and harassment matter. Brehmer did not deposit Williams' $1,000 retainer into a trust account. Brehmer sent correspondence regarding Williams' matter to the City of Minneapolis in March and April 1996 and in March 1997, but otherwise failed to work on the matter even though he told Williams that he was pursuing the matter. Brehmer did not return any of the retainer.

*The Wimler Matter*

The fifth count of misconduct involved Brehmer's representation of Elaina Wimler, which began on February 8, 1999. Wimler retained Brehmer to bring a motion on her behalf to change the custody agreement regarding her minor children. She paid Brehmer a $2,500 retainer fee, but Brehmer did not place the retainer into a trust account. In preparation for her hearing, Brehmer instructed Wimler to sign a blank signature page, which Brehmer then notarized. Brehmer attached the blank signature page to a draft affidavit he prepared, and he submitted the document to the court. Wimler never had the opportunity to correct Brehmer's mistakes or inaccuracies. After mandatory mediation, Brehmer put the matter back on for hearing and obtained another hearing date, but he failed to support his motion with additional papers and has declined Wimler's request to prepare a supplemental affidavit for Wimler's signature. Brehmer has not provided Wimler with an accounting of her retainer, nor has he refunded any of the retainer.

*Brehmer's Probation Violations*

The sixth count of misconduct related to the conditions of Brehmer's probation.

One condition of Brehmer's probation required him to cooperate with any investigation into alleged misconduct. On August 5, 1999, the Director notified Brehmer of the investigation of the complaint regarding Brehmer's conduct in the Green matter and requested information and a response from Brehmer within 14 days. Brehmer was also notified of the complaints and subsequent investigations into his conduct in the Williams, Mattingly, and Wimler matters. Brehmer did not respond to any of the Director's many requests for information within the time frame requested. Brehmer has since responded to some of the Director's requests, but his responses have been incomplete.

Another condition of Brehmer's probation is that he is required to regularly submit a case list of active files to his probation supervisor. The Director learned that Brehmer last provided his probation supervisor with this list when Brehmer's probation was extended on May 24, 1999. The Director notified Brehmer of the case list investigation and requested a response three times, but Brehmer failed to respond. The Director also learned that Brehmer's attorney registration fees were unpaid from January 1, 2000 to February 29, 2000, that he was engaged in the practice of law while suspended, and that another complaint was filed against Brehmer by Olubunmi Adebanjo. Brehmer failed to respond to the Director's inquiries into these matters until July 11, 2000, which was 4 months late.

These six counts of misconduct provided the basis for the Director's March 2000, petition for disciplinary sanctions. The following two client matters in the Director's supplementary petition allege the same types of misconduct as the original petition—neglect, noncommunication, improper notarization, misrepresentation to the court, failure to abide by court rules and orders, and unauthorized practice of law.

## The Craig Matter

Brehmer represented Karen Craig in a post-dissolution proceeding during December 1998. Brehmer instructed Craig to sign a blank signature page, which Brehmer later attached to an affidavit he prepared. Brehmer also instructed Craig to sign a responsive affidavit that she did not review. Both documents were filed with the court.

## The Krinhop Matter

Nancy Krinhop retained Brehmer to represent her in an eviction/unlawful detainer proceeding begun by Dennis Strid in July 1999, and also in a related civil matter. Brehmer failed to properly serve the parties involved, and on February 16, 2000, the housing court ordered that issuance of a writ of restitution allowing Strid to evict Krinhop would be stayed for 20 days to allow Krinhop to properly serve Strid. If Krinhop properly served Strid within the 20–day period, the court would extend the stay until final resolution of the separate civil matter.

On March 15, 2000, the day after the court's 20–day deadline, Brehmer called the court and told the judge's law clerk that Strid's attorney consented to service by mail and Brehmer mailed the complaint within the 20–day period. Brehmer's statement was false, but the court relied on his false statement and voided the writ. On March 28, 2000, Brehmer had Strid properly served. The court conducted a hearing on March 30, 2000 and ordered Brehmer to provide proof that he properly served Strid within the original 20–day period. Brehmer did not respond, and the court vacated the March 16 order and allowed Strid to enforce the writ of restitution allowing Strid to evict Krinhop.

At the referee's July 28, 2000 hearing, Brehmer presented evidence that he suffers from depression. He testified that since before 1980 he has frequently been in therapy for depression. Brehmer's psychologist, Robert Subby, testified that he was Brehmer's therapist off and on since

1992. Subby testified that he currently sees Brehmer individually once each week, and Brehmer also attends an every-other-week men's support group. Subby characterized Brehmer's two psychological disorders as a dysthemic disorder and a generalized anxiety disorder. Subby defined Brehmer's dysthemic disorder as "an overshadowing sense of blueness, downness, glum." Subby defined Brehmer's generalized anxiety disorder as "anxiety, a general sense of fear, of difficulty concentrating, reactivity, * * * and a general fear that, you know, things are not going to go away." Subby recommended psychiatric care and medication for Brehmer. Subby then testified that Brehmer began improving after he began taking antidepressant and anxiety medication. Subby also testified that Brehmer's condition was never at the level of a "disability as a category of diagnosis," and that Brehmer's condition was also never "chronic depression."

On cross-examination, Subby again testified that Brehmer was affected by his psychological disorder, but his disorder was not disabling. Subby also testified that Brehmer continues to blame his misconduct on the stressors in his life—the dissolution of his marriage, the custody battle over his daughter, and the current professional misconduct investigation—and still has not accepted responsibility for his actions. Stubby also testified that Brehmer's "problems with timeliness" began improving sometime in April 2000.

In addition to Subby's psychological testimony, Dr. Lee Beecher offered psychiatric testimony. Beecher conducted a psychiatric evaluation of Brehmer and then testified for Brehmer. After discussing Brehmer's marital, family, financial, and professional problems, Beecher concluded that Brehmer suffered from "dysthymia or a chronic, moderately severe depression, which probably I felt was being partially treated with the medications, but the quality of his psychotherapy generally was pretty good." Beecher testified that he rated Brehmer as a 65 on the standardized Global Assessment of Functioning Scale (GAF). Beecher explained that a GAF score of 65 indicated moderate severity. Beecher testified that he gave Brehmer a GAF score of 65 because Brehmer "is able to function pretty well, but he is having some dysfunction. He's probably able to get along. He's sort of a walking wounded. He's not down and out. He's not in the hospital. On the other hand, he's not functioning as well as he might."

On cross-examination, Beecher again testified that when he examined Brehmer, Brehmer's dysthymia was moderately severe, which meant that he was functioning well and his symptoms were mild with some difficulty in social, occupational, or school functioning. Beecher further testified that Brehmer's medication was appropriate for the symptoms Brehmer exhibited. The only adjectives Beecher used to describe Brehmer's condition were *significant* and *chronic,* which Beecher defined as long lasting.

After considering all the testimony, but before recommending an appropriate disciplinary sanction, the referee considered Brehmer's three mitigation arguments. The referee found that Brehmer's first argument that his workload and secretarial turnover led to his misconduct was without merit. The referee also found that Brehmer's divorce and child custody proceedings were not sufficient to mitigate his misconduct. In addition, the referee found that Brehmer did not meet his burden of proof to show that his psychological disorder mitigated his misconduct because Brehmer did not prove by clear and convincing evidence each of the four elements of the test we articulated in *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983).

The referee next considered certain aggravating factors, including the fact that Brehmer's misconduct was consistent with misconduct for which he had previously been sanctioned. The referee found that Brehmer's misconduct had been ongoing over an extended period of time, and Brehmer had committed multiple acts of mis-

conduct. In addition, the referee found that Brehmer's misconduct continued after the petition for disciplinary action was filed, after Brehmer was represented by counsel in this matter, and after the referee was appointed. Finally, the referee found that Brehmer has not kept his probation supervisor completely informed of the cases he was handling, and he has not consistently implemented his probation supervisor's recommendations.

On August 10, 2000, the referee issued his recommendation for discipline, and Brehmer ordered a copy of the hearing transcript. Brehmer appeals arguing only that the referee failed to consider mitigating factors, including Brehmer's history of depression and various other personal issues that affected Brehmer's ability to practice law within the bounds of the Minnesota Rules of Professional Conduct.

The Director has the burden of proof in disciplinary proceedings and must meet a clear and convincing evidence standard. *See In re Complaint Concerning Miera,* 426 N.W.2d 850, 853 (1988). In determining whether the Director has met the burden of proof, we afford great weight to a referee's findings of fact and conclusions of law. *See In Matter of Application for Discipline of Schmidt,* 402 N.W.2d 544, 545 (1987). Because we deemed the allegations in the Director's March 2000 petition admitted, and because Brehmer did not appeal, he has no right to challenge those findings. But, because Brehmer has ordered a transcript of the disciplinary hearing, the referee's findings regarding the matters asserted in the Director's supplemental petition and the matters asserted by Brehmer as mitigating factors are not conclusive. *See* Rule 14(e), RLPR. The referee's conclusions of law are also not conclusive. *See* Rule 14(e), RLPR; *see also In re Petition for Disciplinary Action against Harry N. Ray,* 610 N.W.2d 342, 345 (2000).

Brehmer challenges the referee's conclusion that his psychological disorder and personal problems do not mitigate his sanctions. An attorney who raises a psychological disability as a mitigating factor to sanctions for professional misconduct has the burden to prove, by clear and convincing evidence, the elements outlined by the court in *Weyhrich,* 339 N.W.2d at 279. In *Weyhrich,* we examined the relationship between the misconduct and the psychological disorder to determine whether the disorder was such that it mitigated Weyhrich's misconduct. *See id.* at 279.

The referee considered the test we articulated in *Weyhrich* and determined that Brehmer's disorder was not serious and therefore did not mitigate his misconduct. Our examination of the record indicates that the referee's determination is supported by facts in the record. However, we must determine the appropriate sanction in light of the referee's and the Director's recommendation of indefinite suspension for a minimum of 2 years and compliance with Rule 24, RLPR and Rule 26, RLPR.

Although we afford great weight to the referee's recommendation, we alone bear the final responsibility to determine what discipline is appropriate. *See In re Klein,* 442 N.W.2d 317, 321 (1989). For guidance in determining the appropriate sanction, we have consistently turned to cases involving similar misconduct. *See In re Petition for Disciplinary Action Against Madsen,* 426 N.W.2d 434, 436 (1988). We determine the appropriate sanction in light of the purpose of attorney discipline to protect the public and the legal profession and to guard the administration of justice by considering: "(1) the nature of the misconduct; (2) the cumulative weight of the rule violations; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* Mitigating and aggravating circumstances are also considered. *See In re Petition for Disciplinary Action Against Marlon O. Haugen,* 543 N.W.2d 372, 375 (1996).

In similar attorney discipline cases we have balanced the equities and imposed an

indefinite suspension for a minimum of 1 or 2 years and have required compliance with Rule 18, RLPR and Rule 24, RLPR. *See In re Petition for Disciplinary Action Against James T. Hanvik*, 609 N.W.2d 235, 242 (2000); *In re Petition for Disciplinary Action Against Bradley K. Anderson*, 569 N.W.2d 923, 928 (1997); *In re Petition for Disciplinary Action Against Scott E. Selmer*, 568 N.W.2d 702, 705 (1997). Brehmer's misconduct is not as egregious as the misconduct in *Hanvik* or the misconduct in *In re Petition for Disciplinary Action Against Pyles*, 421 N.W.2d 321, 323–24 (1988). Both *Hanvik* and *Pyles* involved similar medical and psychological mitigation issues, but those cases had numerous or substantial misappropriations of funds, among other allegations, warranting a 2–year suspension. *See Pyles*, 421 N.W.2d at 325; *Hanvik*, 609 N.W.2d at 240–42. Also, in *Hanvik*, we held that because Hanvik suffered from a moderate psychological disorder, his disorder did not mitigate his misconduct. *See Hanvik*, 609 N.W.2d at 240.

While not being the sole cause of the misconduct, some, but not all, of Brehmer's behavior can be associated with his psychological disorder, which was diagnosed as being "significant," "chronic," and "moderate to severe." Uncontradicted testimony indicated Brehmer was having some significant dysfunction and difficulty in social and occupational settings. There was further evidence that since resuming therapy and taking prescribed medications, Brehmer was making progress but had not yet reached the level he was at several years ago. According to Brehmer's therapist, the next 18 months will be crucial to his recovery. The record thus indicates that Brehmer's disorder is something more than moderate in severity. However, the nature of Brehmer's misconduct and the cumulative weight of the related public rule violations over many years has caused harm to the public and to the legal profession.

 Accordingly, based on all of the facts presented, we indefinitely suspend Brehmer from the practice of law in Minnesota for a minimum of 1 year. We will not consider reinstatement until Brehmer provides adequate psychological or other medical evidence establishing that he has no physical or psychological problems that would impair his ability to practice law competently, diligently, and within the rules of conduct for attorneys. In addition, we will not consider reinstatement until Brehmer completes the Multistate Professional Responsibility Exam with a passing examination score. Brehmer must comply with Rule 24, RLPR and pay to the Director $900 in costs plus disbursements. Finally, Brehmer must also comply with the requirements for reinstatement under Rule 18, RLPR.

So ordered.