**In re PETITION FOR DISCIPLINARY ACTION AGAINST Ragnhild A. WESTBY, an Attorney at Law of the State of Minnesota.**

No. CX–96–1459.

Supreme Court of Minnesota.

Feb. 21, 2002.

Edward J. Cleary, Director, Office of Lawyers Professional Responsibility, Kenneth L. Jorgensen, First Assistant Director, Attorney for Appellant.

Ragnhild A. Westby, Pro Se, Attorney for Respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition

for disciplinary action against Ragnhild A. Westby, an attorney licensed to practice law in the state of Minnesota, alleging professional misconduct warranting public discipline. The alleged misconduct relates to Westby's interactions with four individuals and the Director. The Director claims that Westby (1) failed to act with reasonable diligence and promptness in representing a client, (2) failed to communicate with a client, (3) failed to place client funds in a trust account, (4) knowingly disobeyed an obligation under the rules of a tribunal, (5) failed to be truthful in statements to others, (6) engaged in the unauthorized practice of law, (7) failed to respond to requests for information from the Director of the Office of Lawyers Professional Responsibility, (8) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and (9) engaged in conduct prejudicial to the administration of justice. At the time these alleged acts of misconduct occurred, Westby was suspended from the practice of law for prior professional misconduct.

A referee held a hearing, found that Westby had violated several of the Minnesota Rules of Professional Conduct, and recommended that Westby be disbarred. Westby appealed, claiming that the referee violated the Minnesota Rules of Evidence in admitting certain testimony from her ex-husband and erred in finding that she violated the Rules of Professional Conduct. We conclude that Westby violated the Rules of Professional Conduct and that disbarment is the appropriate sanction.

Ragnhild A. Westby was admitted to the practice of law in Minnesota in 1976. She practiced primarily in the field of family law. In 1993, Westby received a private admonition for neglect and failing to communicate adequately with a client in violation of Minn. R. Prof. Conduct 1.3 and 1.4. On December 4, 1997, this court issued an order suspending Westby from the practice of law for 60 days for failing to (1) deposit retainers in her trust account, (2) maintain proper trust account books and records, (3) communicate with clients, (4) respond to notices of investigation, (5) pay a debt secured by property, and (6) timely file and pay federal and state individual income tax returns and employer's withholding tax returns. *In re Westby*, 572 N.W.2d 278, 279–81 (Minn.1997). The suspension order contained certain conditions of reinstatement. *Id.* Approximately 1 year and 9 months later, on August 31, 1999, Westby asked this court to reinstate her to the practice of law. The Office of Lawyers Professional Responsibility (OLPR) opposed reinstatement on the grounds that Westby had not provided proof of compliance with the reinstatement conditions. This court denied Westby's request for reinstatement.

Westby's current disciplinary action arises out of conduct with respect to four individuals and the Director. The alleged misconduct was committed while Westby was suspended from the practice of law.

### A. The Wyttenback Matter

The first matter involves Westby's representation of Shirley Rose Wyttenback. In 1997, before Westby was suspended from the practice of law, Wyttenback contacted Westby about a marriage dissolution. Wyttenback filled out a client inventory form and mailed it to Westby. Based on the information in the questionnaire, Westby drafted a marriage dissolution petition, but heard nothing further from Wyttenback. Wyttenback testified, and the referee found, that Wyttenback did not enter into a written fee agreement with Westby.

In the spring of 1998, Wyttenback's brother telephoned Westby to determine why his sister's marriage dissolution had

not commenced. Westby told the brother that the dissolution could not get started until she received a retainer. At Westby's direction, the brother then wired $1,900 to Westby's personal bank account. The brother testified, and the referee found, that Westby never informed him that she was suspended from the practice of law.

After receiving the funds, Westby asked Thomas Rowe, an attorney and Westby's ex-husband, to sign the dissolution petition. The referee found that Westby, in order to get Rowe to sign the petition, falsely told Rowe that she was about to be reinstated to the practice of law. The referee also found that Westby caused the petition to be filed with the court. After using $210.80 of the $1,900 to pay expenses for Wyttenback, Westby withdrew the remaining funds from her personal bank account to pay for personal expenses. At the referee's hearing, Westby testified that she used the money to reimburse herself for insurance premiums she paid on Rowe's behalf. However, the referee found that none of the specific funds received from Wyttenback's brother were used to pay the premiums. The referee found that Westby has not refunded the balance of the funds to Wyttenback or her brother. The referee concluded that Westby's conduct with respect to Wyttenback violated Minn. R. Prof. Conduct 1.4, 1.15(a), 3.4(c), 5.5(a), 8.4(c), and 8.4(d) and Lawyers Professional Responsibility Board Opinion 15.

## B. The Heyen Matter

In 1998, while Westby was suspended from the practice of law, Sheila Heyen contacted Westby by telephone regarding a child custody matter. At the referee's hearing, Heyen testified that Westby told her there was nothing she could do for Heyen because Heyen had not been served with a change of custody motion. Heyen was subsequently served and she and her second husband then met with Westby several times. Heyen and her second husband testified, and the referee found, that Westby did not tell them that she was suspended from the practice of law and could not represent Heyen. Heyen testified, and the referee found, that Westby obtained a continuance of the child custody hearing, discussed with Heyen evidence for the hearing, and drafted an affidavit for her signature. Heyen also issued a check for $500 to Westby to retain her as an attorney for the upcoming hearing. The referee found that Heyen did not sign a retainer agreement with Westby and that Westby deposited the $500 into her personal bank account.

Heyen tried to contact Westby a few days before the custody hearing, but was not able to reach her until the evening before the hearing. That evening, Westby informed Heyen that she had been in the emergency room with a broken ankle and that she was going to have the hearing postponed. Heyen testified that at this point she no longer trusted Westby and went to Westby's home the next morning to collect her file. At that time, Westby offered to have Rowe represent Heyen at the hearing, but Heyen declined. Heyen then went to the hearing without counsel and the court rescheduled the hearing. Heyen later asked Westby for a refund of her $500 retainer and Westby issued a check for that amount. Heyen attempted to cash the check several times before it was honored. The referee concluded that Westby's conduct with respect to Heyen violated Minn. R. Prof. Conduct 1.4, 1.15(a), 5.5(a), 8.4(c), and 8.4(d) and Opinion 15.

## C. The Tourville/Jenness Matter

Before Westby was suspended from the practice of law, she represented Linda

Jenness, n/k/a Tourville, in a post-decree support matter. After Westby was suspended, the court issued an order on a pending motion and set the matter for a hearing on March 5, 1998. The referee found that Westby did not notify Tourville or the court of her suspension. Tourville testified, and the referee found, that Westby assisted Tourville in preparing an affidavit for the hearing. The affidavit was filed with the court. Shortly before the hearing, Westby informed Tourville that she was suspended and that she expected to receive a reinstatement order within the next several days. Westby told Tourville that she would have the hearing continued. Westby then telephoned a court administrator and told the administrator that she was suspended and that she expected to be reinstated within the next several days. At Westby's request, the court continued the hearing to March 19.

During the week before the March 19 hearing, Tourville made repeated efforts to contact Westby, but was unable to do so until the morning of the hearing. At that time, Westby told Tourville that she had not been reinstated and that the hearing again would be continued. Westby telephoned the court administrator to get the hearing continued. The court administrator testified, and the referee found, that the court administrator told Westby that the hearing would not be continued. The referee also found that Westby did not inform Tourville that the hearing was going to proceed as scheduled. Neither Westby nor Tourville appeared at the hearing and the court entered a default judgment against Tourville. Tourville later learned that the hearing had in fact taken place and attempted to contact Westby. Westby failed to return Tourville's calls. Tourville subsequently obtained other counsel and was successful in vacating the default order. The referee found that Tourville incurred significant attorney fees in vacating the order. The referee concluded that Westby's conduct with respect to Tourville violated Minn. R. Prof. Conduct 1.3, 1.4, 3.4(c), 4.1, 5.5(a), 8.4(c), and 8.4(d).

## D. The Yang Matter

The fourth matter concerns Westby's interactions with Linda Miller, an attorney acting on behalf of Sa Yee Yang. The referee found that before Westby was suspended from the practice of law, an attorney in Westby's law office assisted Yang in changing the legal name of his adopted daughter. This work was completed in June 1998. Yang later sought an amended birth certificate and consulted Miller on this matter in 1999. Miller believed that Westby had the original birth certificate because Yang told Miller that Westby had done the adoption and name change. Miller therefore called Westby in October 1999 and requested the original certificate. Westby testified that she told Miller that the Juvenile Court might have the certificate and that Westby would check. Westby also testified that she learned from the court clerk that the Yang file was not at the Juvenile Court. Westby did not deliver the certificate and Miller testified that Westby did not return her telephone calls. Miller subsequently filed an ethics complaint with the OLPR in January 2000. The referee found that because neither Yang nor anyone else provided Westby with the original birth certificate, Westby's failure to respond to Miller's request for the certificate did not violate the Minnesota Rules of Professional Conduct. The Director does not contest the referee's findings and the Yang matter is not before us.

## E. Failure to Cooperate in the Disciplinary Investigation

The fifth matter concerns Westby's interactions with the Director and the

OLPR. In October 1999, the OLPR informed Westby that Wyttenback had filed a complaint and requested that Westby provide a written explanation for the disposition of the $1,900 retainer and her failure to return the funds. The referee found that Westby's written response did not address these issues. The referee also found that the OLPR sent Westby two additional letters requesting the same information and that Westby did not respond to either letter. During its investigation of the Yang matter, the OLPR wrote two letters to Westby requesting that she respond to the complaint. The referee found that Westby did not respond in writing to either letter. The referee concluded that Westby's conduct with respect to the Director's inquiries violated Minn. R. Prof. Conduct 8.1(a)(3) and 8.4(d).

I.

 Westby contends that the referee violated the Rules of Evidence in admitting testimony from Westby's ex-husband, Thomas Rowe. More specifically, Westby asserts that counsel for the OLPR had conversations with Rowe, deposed Rowe, and received privileged documents from Rowe regarding the disciplinary action against her. Westby argues that because neither she nor Rowe had waived the marital privilege, these communications violated the Rules of Evidence. However, Westby does not assert that the referee admitted any of this evidence at Westby's disciplinary hearing.

 Rulings on evidentiary matters are left to the discretion of the district court and will not be reversed absent an abuse of discretion. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn. 1983). Under Minnesota law, there are two distinct marital privileges—a testimonial privilege and a communications privilege. The testimonial privilege prevents one spouse from testifying against the other during the marriage. Minn.Stat. § 595.02, subd. 1(a) (2000). The communications privilege prohibits compelled testimony during or after the marriage about communications that took place between spouses during the marriage. *Id.* Westby and Rowe were married in 1985 and divorced on May 24, 1999. The disciplinary hearing was held in January 2001. Therefore, the testimonial privilege is inapplicable.

 The communications privilege applies to all interspousal communications. *State v. Lee*, 480 N.W.2d 668, 671 (Minn. App.1992), *rev'd on other grounds*, 494 N.W.2d 475 (Minn.1992). The term communication as used in section 595.02, subd. 1(a), applies only to assertive conduct, including "written or spoken words, acts, and gestures which were intended by one spouse to convey a meaning or message to the other." *State v. Hannuksela*, 452 N.W.2d 668, 676–77 (Minn.1990). Thus, it is permissible for one spouse to testify as to the other spouse's nonassertive conduct that is not directed to the first spouse. *Id.* at 677.

During the disciplinary hearing, the referee gave Westby what he called a "kind of a standing marital privilege objection" that would be ruled on whenever Rowe testified based on what Westby had told Rowe. The Director asked Rowe if he knew whether Wyttenback had authorized Rowe to represent her. Westby objected on the grounds that Rowe was not competent to testify based on the marital privilege. The objection was overruled and Rowe answered that he did not know if Wyttenback had authorized Rowe to represent her. The Director later asked Rowe who he understood would be representing Wyttenback and Westby objected on the same grounds. The Director withdrew the question after Rowe stated that

his answer would be based on what Westby had told him.

Westby objected when the Director asked Rowe whether, when he signed the petition, he was aware that Wyttenback's brother had paid Westby $1,900 and the objection was overruled. Rowe then answered that he did not know that Wyttenback's brother had paid Westby $1,900. Westby again objected when Rowe was asked whether Westby had ever transferred the $1,900 to Rowe. The objection was overruled and Rowe responded "no." The referee also overruled Westby's objection to a question posed to Rowe regarding the validity of Westby's claim that she paid insurance premiums on behalf of Rowe. Rowe then testified about his discussions with Westby regarding payment of insurance premiums. Finally, Westby objected to the Director's question to Rowe as to whether Rowe ever signed a Substitution of Attorney agreeing to represent Tourville in the support matter. The objection was overruled and Rowe responded that he had not "seen" a Substitution of Attorney.

Westby has not identified any testimony by Rowe at the disciplinary hearing that offends the marital privilege. Further, our review of the record indicates that Rowe's testimony does not offend the marital privilege. For these reasons, we conclude that Westby's claim that the referee violated the Rules of Evidence in admitting Rowe's testimony lacks merit.

## II.

 Westby's primary argument is that her conduct with respect to Wyttenback, Heyen, Tourville, and the Director did not violate the Rules of Professional Conduct. The Director has the burden of proof in disciplinary matters and must meet a clear and convincing evidence standard. *In re Brehmer*, 620 N.W.2d 554, 561

(Minn.2001). Because Westby ordered a transcript of the hearing, the referee's findings of fact and conclusions of law are not conclusive. Rule 14(e), RLPR; *In re Fuller*, 621 N.W.2d 460, 465–66 (Minn. 2001). However, we give great deference to a referee's findings on disputed facts and will not reverse the referee's findings and conclusions unless they are clearly erroneous. *In re Reiter*, 567 N.W.2d 699, 701 (Minn.1997).

### A. Rule 1.3

 The Director alleges that Westby's conduct with respect to Tourville violates Minn. R. Prof. Conduct 1.3 which mandates that a lawyer "act with reasonable diligence and promptness in representing a client." A lawyer neglects client matters when she fails to return client telephone calls and fails to appear on behalf of clients. *In re Muenchrath*, 588 N.W.2d 497, 501 (Minn.1999) (discussing *In re Bishop*, 582 N.W.2d 261, 261–62 (Minn.1998)). Although Tourville repeatedly tried to contact Westby during the week before the March 19 hearing, she was unable to do so until the morning of the hearing. At that time, Westby told Tourville that the hearing would be continued. However, Westby was unable to obtain a continuance and failed to inform Tourville that the hearing would proceed. In addition, Westby did not appear at the March 19 hearing. Tourville, after learning the hearing took place, telephoned Westby several times, but Westby did not return her calls. We conclude that this conduct by Westby with respect to Tourville violated Minn. R. Prof. Conduct 1.3.

### B. Rule 1.4

 The Director next contends that Westby's conduct with respect to Wyttenback, Heyen, and Tourville violates Minn. R. Prof. Conduct 1.4. Rule 1.4(a)

provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Minn. R. Prof. Conduct 1 .4(a). A lawyer must also "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Minn. R. Prof. Conduct 1.4(b). A lawyer violates Rule 1.4 by failing to communicate with her client, failing to advise a client of the status of his or her case, and failing to return client telephone calls. *In re Milloy*, 571 N.W.2d 39, 43–44 (Minn.1997) (regarding failure to communicate); *In re Szymialis*, 557 N.W.2d 554, 556 (Minn.1997) (regarding failure to advise client of case status); *In re Madsen*, 426 N.W.2d 434, 435 (Minn.1988) (regarding failure to return calls). Westby did not advise Wyttenback or Heyen that she was suspended from the practice of law and could not represent them. Similarly, Westby did not advise Tourville that she was suspended from the practice of law and could not represent her and only shortly before the March 5 hearing did she inform Tourville that she was suspended. With respect to the Tourville matter, Westby falsely told Tourville that she was about to be reinstated and, as discussed above, did not return Tourville's calls or keep her properly informed about the March 19 hearing. We conclude that Westby's conduct with respect to Wyttenback, Heyen, and Tourville violated Minn. R. Prof. Conduct 1.4.

C. Rule 1.15(a)

■■■■ The Director also contends that Westby's conduct with respect to Wyttenback and Heyen violates Minn. R. Prof. Conduct 1.15(a) and Opinion 15. Rule 1.15(a) mandates that "[a]ll funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more

identifiable interest bearing trust accounts." Minn. R. Prof. Conduct 1.15(a). Opinion 15 also provides that all advance fee payments must be deposited in an interest bearing trust account. A licensed attorney is charged with the knowledge that client funds must be maintained in a separate trust account and that those funds are not for the personal use of the attorney. *In re Copeland*, 505 N.W.2d 606, 608 (Minn.1993). It is undisputed that Westby directed Wyttenback's brother to transfer a retainer to Westby's personal bank account and that Westby deposited a retainer from Heyen into her personal bank account. We therefore conclude that Westby's conduct with respect to Wyttenback and Heyen violated Minn. R. Prof. Conduct 1.15(a). However, an attorney cannot be disciplined solely on a violation of an Opinion of the Lawyers Professional Responsibility Board. *In re Panel File No. 99–42*, 621 N.W.2d 240, 242 (Minn.2001). Therefore, we conclude that the referee erred to the extent, if any, that he imposed any discipline solely on the basis of a violation of Opinion 15.

D. Rule 3.4(c)

■■■■ The Director alleges that Westby's conduct with respect to Wyttenback and Tourville violates Minn. R. Prof. Conduct 3.4(c) which provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 3.4(c) is violated when a lawyer who is suspended from the practice of law fails to comply with a court's order to comply with Rule 26, RLPR, which requires a suspended lawyer to send notice of the lawyer's suspension to each client, opposing counsel, and tribunals before which the lawyer had matters pending. *In re Grzybek*, 567 N.W.2d 259, 264–65 (Minn.1997). As part

of our December 4, 1997 suspension order, Westby was ordered to comply with Rule 26. However, Westby failed to inform Wyttenback and Wyttenback's brother that she was suspended from the practice of law and could not represent Wyttenback. Similarly, Westby did not inform Tourville until just before the March 5 hearing that she was suspended from the practice of law. We conclude that this conduct by Westby with respect to Wyttenback and Tourville violated Minn. R. Prof. Conduct 3.4(c).

### E. Rule 4.1

■ The Director alleges that Westby's conduct with respect to Tourville violates Minn. R. Prof. Conduct 4.1 which provides that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Shortly before the March 5 hearing, Westby falsely told Tourville and a court administrator that she was about to be reinstated. We conclude that this conduct violated Minn. R. Prof. Conduct 4.1.

### F. Rule 5.5(a) and Rule 8.4(d)

■ The Director further contends that Westby's conduct with respect to Wyttenback, Heyen, and Tourville violates Minn. R. Prof. Conduct 5.5(a) and 8.4(d). Rule 5.5(a) provides that a lawyer shall not "practice law in a jurisdiction where to do so violates the regulation of the legal profession in that jurisdiction." Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Practicing law while suspended violates Rule 5.5(a) and Rule 8.4(d). *In re Ray*, 610 N.W.2d 342, 346 (Minn.2000). While Westby was suspended, she drafted and filed a dissolution petition on behalf of Wyttenback and provided legal advice to Heyen and Tourville. We conclude that

this conduct with respect to Wyttenback, Heyen, and Tourville violated Minn. R. Prof. Conduct 5.5(a) and 8.4(d).

### G. Rule 8.1(a)(3) and Rule 8.4(d)

■ The Director contends that Westby failed to cooperate with the investigation of the Wyttenback and Yang complaints in violation of Minn. R. Prof. Conduct 8.1(a)(3) and 8.4(d). Rule 8.1(a)(3) provides that a lawyer, in connection with a disciplinary matter, shall not "knowingly fail to respond to an admissions or discipline authority's lawfully authorized demand for information by either providing the information sought or making a good faith challenge to the demand." Failing to respond to a notice of investigation constitutes failure to cooperate with disciplinary authorities. *See* Minn. R. Prof. Conduct 8.1(a)(3). In addition, conduct which interferes with the disciplinary process is prejudicial to the administration of justice in violation of Rule 8.4(d). *In re A.M.E.*, 533 N.W.2d 849, 851 (Minn.1995). The referee found that Westby did not respond to the Director's request for an explanation concerning the disposition of the Wyttenback retainer and did not respond at all to the Yang complaint. The record supports the referee's findings and conclusions and we therefore conclude that Westby failed to cooperate with the Director's investigation in violation of Minn. R. Prof. Conduct 8.1(a)(3) and 8.4(d).

### H. Rule 8.4(c)

■ Finally, the Director alleges that Westby's conduct with respect to Wyttenback, Heyen, and Tourville violates Minn. R. Prof. Conduct 8.4(c) which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The misappropriation of client funds violates Rule 8.4(c). *Grzybek*, 567

N.W.2d at 264 (citation omitted). Misappropriation occurs whenever funds belonging to a client are not deposited in a trust account and are used for any purpose other than that specified by the client. *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). A lawyer also violates Rule 8.4(c) by making false representations with an intent to deceive. *In re Peterson*, 456 N.W.2d 89, 92 (Minn.1990). Westby falsely told Tourville and a court administrator that she was about to be reinstated to the practice of law. While Westby was suspended, she accepted a retainer from Heyen and procured a retainer from Wyttenback's brother by telling him that the dissolution could not proceed unless she had funds. Westby used most of the Wyttenback retainer for her personal use and has failed to return the funds. We conclude that Westby's conduct with respect to Wyttenback, Heyen, and Tourville violated Minn. R. Prof. Conduct 8.4(c).

In sum, we conclude that Westby committed multiple acts of professional misconduct and that the referee did not err in his findings of fact and conclusions of law. More particularly, we hold that Westby violated Minn. R. Prof. Conduct 1.3, 1.4, 1.15(a), 3.4(c), 4.1, 5.5(a), 8.1(a)(3), 8.4(c), and 8.4(d).

### III.

Having concluded that Westby violated several rules of professional conduct, we must now determine the appropriate sanction. The final responsibility for determining the appropriate discipline rests solely with this court. *Brehmer*, 620 N.W.2d at 561. The purpose of discipline is not to punish the lawyer but, rather, "to protect the courts, the public, and the profession and to guard the administration of justice." *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988). In evaluating the appropriateness of the disciplinary sanction, we examine the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the potential harm to the public, and the harm to the legal profession. *Brehmer*, 620 N.W.2d at 561. The disciplinary sanction imposed is a function of the specific facts of the misconduct as well as the presence or absence of mitigating and aggravating circumstances. *Isaacs*, 451 N.W.2d at 211.

Westby, while she was suspended from the practice of law, failed to exercise diligence with respect to client matters, neglected to communicate with clients, failed to place client funds into a trust account, knowingly disobeyed an obligation under the rules of a tribunal, knowingly made false statements to others, engaged in the unauthorized practice of law, failed to cooperate with the disciplinary investigations, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and engaged in conduct prejudicial to the administration of justice. Moreover, the referee found numerous aggravating circumstances. First, Westby failed to make any restitution to Wyttenback or Wyttenback's brother for the misappropriated retainer. Second, Westby's dishonesty forced Wyttenback to accept the legal services of Rowe, who neglected the case and failed to communicate with Wyttenback. Third, Westby's lack of candor and dishonesty caused Heyen unnecessary anxiety by forcing her to appear at a hearing pro se and requiring Heyen to search for substitute counsel without any notice. Fourth, Westby's lack of candor and dishonesty caused Tourville unnecessary anxiety and forced her to incur additional attorney fees to vacate a default order. Fifth, Westby's failure to deposit the Wyttenback and Heyen retainers into a trust account and her failure to cooperate with the Wyttenback and Yang investigations are aggravated by the fact that Westby was disciplined for similar violations in 1997.

Finally, Westby's lack of candor and cooperation throughout the disciplinary proceedings is also an aggravating factor.

 In determining the appropriate disciplinary sanction, prior cases are helpful by way of analogy. *In re Kaszynski,* 620 N.W.2d 708, 713 (Minn.2001); *Isaacs,* 451 N.W.2d at 211. We have previously imposed the sanction of disbarment for misconduct similar to that of Westby. For example, in *Ray,* we held that an attorney who repeatedly engaged in the practice of law while under suspension, failed to timely surrender client documents upon request, failed to cooperate fully with the disciplinary investigation, and presented no mitigating factors should be disbarred. 610 N.W.2d at 346–47. We noted that Ray's misconduct was aggravated by his prior discipline for the unauthorized practice of law while suspended. *Id.* at 347. Furthermore, we observed that "Ray does not acknowledge that he has committed any misconduct, and it appears that unless appropriately sanctioned, he is likely to engage in similar conduct in the future." *Id.*

 The gravity of Westby's professional misconduct exceeds that of Ray. For example, Westby misappropriated client funds and "[d]isbarment is the usual discipline for attorney misappropriation of client funds except in instances when the attorney presents clear and convincing evidence of substantial mitigating circumstances which show that the attorney did not intentionally convert the funds." *In re Graham,* 609 N.W.2d 894, 896 (Minn.2000) (citation omitted). In *Graham,* we held that disbarment is the appropriate sanction for an attorney with a lengthy disciplinary history who, while on probation for previous misconduct, misappropriated client funds, charged an unreasonable fee, neglected client matters, and violated other terms of probation. *Id.* In addition,

disbarment or indefinite suspension is the typical sanction for repeated instances of client neglect and failure to communicate, as well as for making misrepresentations to clients, the public, and the courts. *In re Schmidt,* 586 N.W.2d 774, 776 (Minn.1998) (citation omitted). Moreover, we have disbarred attorneys who have engaged in the practice of law while suspended or who have practiced without a valid license. *In re Hunter,* 473 N.W.2d 866, 868–69 (Minn. 1991) (practicing while suspended); *In re Feldman,* 391 N.W.2d 826, 828 (Minn.1986) (practicing without valid license). Further, we have emphasized that an attorney's lack of cooperation with disciplinary authorities constitutes serious professional misconduct. *Grzybek,* 552 N.W.2d at 217. Finally, disbarment is an appropriate sanction for repeated serious misconduct. *Graham,* 609 N.W.2d at 896 (citing *In re Weems,* 540 N.W.2d 305, .309 (Minn.1995), and *In re Goldstein,* 581 N.W.2d 36, 36 (Minn.1998)).

We have previously applied severe discipline for conduct similar to that of Westby. In addition, numerous aggravating circumstances are present here, including the fact that Westby committed the current misconduct while suspended from the practice of law for similar prior misconduct. Moreover, because Westby does not acknowledge that she has committed any misconduct, she might engage in similar conduct in the future unless she is appropriately sanctioned. In order to protect the courts, the public, and the legal profession and to guard the administration of justice, we hold that Westby's professional misconduct warrants disbarment.

Disbarment ordered.