In re Petition for DISCIPLINARY AC-
TION AGAINST David L. BISHOP, an
Attorney at Law of the State of Minne-
sota.

No. C9–97–1432.

Supreme Court of Minnesota.

Aug. 6, 1998.

Edward J. Cleary, Director, Betty M.
Shaw, Senior Asst. Director, Office of Law-
yers Professional Responsibility, St. Paul, for
Director.

David L. Bishop, Falcon Heights, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility brings this petition for disciplinary action against respondent David L. Bishop, a solo practitioner who was admitted to the practice of law in Minnesota October 1983.[1] The petition attributes to Bishop a pattern of neglect, non-communication, failure to return files and property, and misrepresentation with respect to four clients, as well as a pattern of noncooperation with respect to the Director's investigation of complaints against him. Under the circumstances, we deem the appropriate discipline for Bishop's conduct to be indefinite suspension from the practice of law.

The first of the four clients to file complaints against Bishop retained Bishop in September 1995. Bishop claims that the scope of representation was limited to ascertaining the feasibility of bringing a lawsuit on the client's behalf. Bishop "prepared a draft summons and complaint but did not serve or file it despite indications * * * that the client expected [Bishop] to initiate suit * * * ." From March 1996 onward, Bishop failed to return the client's telephone calls or otherwise keep him abreast of the matter's status. Although the client requested the return of his file on May 3, 1996, Bishop did not do so until August 12, 1996.

The Director mailed a notice of investigation and copy of the client's complaint to Bishop on May 31, 1996. Bishop failed to provide a written response to the complaint within the allotted 14 days and, when contacted, Bishop claimed that the complaint had not been enclosed with the notice of

---

1. Because Bishop failed to respond to the charges and supplementary charges of unprofessional conduct or to attend a pre-hearing meeting, the panel chair granted the Office's motion to bypass panel proceedings and to file a petition for disciplinary action. When Bishop failed to file an answer to the petition, the Office moved for summary relief. We issued an order deeming the petition's allegations admitted and setting a hearing at which the appropriate discipline would be considered. Bishop neither filed a brief nor participated in the hearing.

investigation. Another copy of the complaint was mailed to Bishop on or about July 3, 1996. Bishop did not deliver a written response to the Director until August 12, 1996.

In the spring of 1995, Bishop began representing the second client, a plaintiff in an employment discrimination case. In November 1996, one day before the defendant's motion for summary judgment was to be heard, Bishop requested an extension of time to respond to the motion. The court granted a two-week extension; however, Bishop telephoned the court on the day of the rescheduled hearing and informed the court he would be unable to attend because of illness. Several days later, the defendant filed a motion for sanctions, which was to be heard in a conference call. Although Bishop was notified of the conference call, neither defense counsel nor the court could reach him at the appointed time. No response to the motion for summary judgment having been filed, the court granted the motion several weeks later.

From the date of the rescheduled hearing, Bishop stopped communicating with the second client, despite her many efforts to reach him and to find out whether the litigation was proceeding. The efforts of the client's new attorney to talk with Bishop were rebuffed, as were his efforts to obtain the client's file from Bishop. The district court denied the client's motion to reopen the action.

In November 1996, a third client, whom Bishop was representing in a sexual harassment action, tried to make arrangements to stop by Bishop's office to sign her deposition transcript. However, each time she called, Bishop's secretary told her that Bishop was busy or was not ready and that he would get back to her. By December 1996, Bishop had stopped communicating with the client entirely, despite her efforts to reach him by telephone and fax. When the client asked for the return of her files in January 1997, Bishop did not comply.

On March 21, 1997, and March 24, 1997, the Director sent by certified mail notices of investigation of the second and third clients' complaints. The notices specified that Bishop should provide written responses to the complaints within seven days and attend a meeting in the Office on March 31. Bishop telephoned the Office and rescheduled the meeting for April 1. At that meeting, Bishop promised to prepare prompt written responses to both complaints. He did not do so until May 21, 1997, after the Director had sent him three additional letters reiterating his request for responses.

In the late fall or early winter of 1996 the fourth client retained Bishop to defend him in a civil matter. Bishop agreed to prepare an answer and counterclaim. In subsequent conversations, Bishop told the client that "the matter was being taken care of" and that an answer and counterclaim had been served and filed. In fact, nothing had been served or filed, and the plaintiff obtained a default judgment against Bishop's client. The client's telephone call and fax to Bishop about the default judgment went unanswered. Subsequent efforts by the client and his new counsel to contact Bishop by telephone and by letter also were unavailing, and Bishop never returned the client's file, although he was asked to do so.

On June 26, 1997, the Director mailed and faxed Bishop a notice of investigation, a copy of a complaint filed by the fourth client's new attorney, and an amended notice of pre-hearing meeting, which stated that the pre-hearing meeting was to take place on July 9. The notice of investigation requested that Bishop prepare a written response by, and meet with the Director on, July 7. Bishop did not submit a response to the complaint, attend the July 7 meeting, or telephone to explain his absence. On July 8, Bishop telephoned and rescheduled the pre-hearing meeting to July 10. He also promised to fax his response to the fourth complaint that afternoon. On July 10, Bishop called the Director to report that he had the flu, and the pre-hearing meeting again was rescheduled for July 11. On July 11, twenty minutes before the pre-hearing meeting was to begin, Bishop called the Director and left a message saying that he had a medical appointment and would call to reschedule. Bishop never rescheduled the pre-hearing meeting or responded to the complaint. The Director rescheduled the pre-hearing meeting for July 25, giving notice to Bishop. Again, Bishop neither ap-

peared nor provided any explanation for his absence. According to his brief, the Director has not heard from Bishop since his telephone call on July 11, 1997.

The petition for disciplinary action asserts that: (1) Bishop's neglect of all four clients' legal matters, as well as his failure to communicate with them regarding those matters, violated rules 1.3 and 1.4(a) of the Minnesota Rules of Professional Conduct; (2) Bishop limited the objectives of his representation of the first client without consulting the client and without obtaining his consent to such a limitation, thereby violating rules 1.2(a) and 1.4(b); (3) by failing to return client files and property to the four clients, Bishop violated rule 1.16(d); and (4) Bishop violated rule 8.4(c) by misrepresenting to the fourth client that an answer and counterclaim had been prepared and filed on the client's behalf. In addition, the petition asserts that by failing to respond to the Director's requests for information—either in a timely manner or at all—Bishop has violated Minn. R. Prof. Conduct 8.1(a)(3) and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR).

Early on during the Director's investigation, Bishop alleged that his misconduct was caused by illness. He authorized the release of medical information, and the Director tried to work with Bishop to resolve the complaints against him. However, he soon ceased cooperating, and although reports from Bishop's doctors in June 1997 indicated that his condition was improving, the Director observes that he was experiencing "complete non-cooperation" at the same time. Thus, the Director recommends that Bishop's license to practice law be suspended indefinitely, either because his noncooperation warrants it or because his conduct indicates that he has not sufficiently recovered from his illness to practice law.

■ We have stated that "[t]he purpose of attorney discipline is not to punish the attorney, but rather to protect the courts, the public and the legal profession, as well as to guard the administration of justice." In re Madsen, 426 N.W.2d 434, 435 (Minn.1988). "[S]anctions will be imposed on those attorneys who, after careful investigation, proper

notice, and hearing, are found to have demonstrated that they do not possess the qualities of character and the professional competence requisite to the practice of law." In re Rockne, 375 N.W.2d 28, 30 (Minn.1985) (internal quotations omitted). "In determining the appropriate discipline, the court considers: (1) the nature of the misconduct; (2) the cumulative weight of the rule violations; (3) the harm to the public; and (4) the harm to the legal profession." Madsen, 426 N.W.2d at 436. In addition, we often have consulted cases involving similar misconduct in our efforts to impose appropriate and fair sanctions. See, e.g., In re Grzybek, 552 N.W.2d 215, 216–17 (Minn.1996); Madsen, 426 N.W.2d at 436.

■ By his conduct, Bishop has caused considerable—and, in at least one instance, irreparable—harm to at least four of his clients. Bishop's repeated failure to respond to his clients' requests for information, over the course of many months, is especially distressing, and his unwillingness or inability to cooperate with the Director's efforts is unfortunate. Misconduct of this magnitude surely tarnishes the reputation of, and jeopardizes the public's trust in, the legal profession.

Regrettably, Bishop has not demonstrated that his illness caused the misconduct, and he has made no effort to keep the Director apprised of his progress toward recovery. See In re Cowan, 540 N.W.2d 825, 827 (Minn. 1995) (observing that the court "cannot take such [mitigating] factors into account without clear and convincing evidence of physical or psychological disorders"). However, we note with some hopefulness that prior to these events, Bishop had no history of disciplinary proceedings. Under these circumstances, we agree with the Director that indefinite suspension is the appropriate discipline for Bishop's conduct. An examination of this court's prior decisions confirms that this sanction is fair. Cf., e.g., In re Olson, 545 N.W.2d 35, 38 (Minn.1996); In re Engel, 538 N.W.2d 906, 906–07 (Minn.1995); Madsen, 426 N.W.2d at 435; Rockne, 375 N.W.2d at 29–30.

Accordingly, we order that:

1. Respondent David L. Bishop is hereby suspended indefinitely from the practice of law, pursuant to Rule 15(a)(2), RLPR, effective immediately, and he shall comply with the notice requirements of Rule 26, RLPR;

2. If and when respondent petitions for reinstatement pursuant to rule 18, RLPR, his reinstatement shall be conditioned upon his demonstrating, by clear and convincing evidence, that he is fit to practice law, *cf.* *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983); and

Respondent pay $900 in costs pursuant to Rule 24(a), RLPR.

Mr. Bishop is ordered suspended.