**In re Petition for DISCIPLINARY ACTION AGAINST Robert Paul MUENCHRATH, an Attorney at Law of the State of Minnesota.**

No. C3–98–1825.

Supreme Court of Minnesota.

Feb. 4, 1999.

Edward J. Cleary, Director, Betty M. Shaw, Senior Assistant Director, St. Paul, for Office of Lawyers Responsibility Bd.

Robert Paul Muenchrath, pro se, Des Moines, Iowa.

OPINION

PER CURIAM.

This is a disciplinary action against respondent Robert Paul Muenchrath, an attorney licensed to practice law in the State of Minnesota. The Director of the Office of Lawyers Professional Responsibility received two complaints of unprofessional conduct against Muenchrath and subsequently charged him with neglect, misrepresentation, and non-communication. The director also charged Muenchrath with noncooperation in the complaint investigation. Cumulatively, Muenchrath has been charged with violating Minnesota Rules of Professional Conduct 1.3, 1.4, 1.15(b), 4.1, 8.1(a)(3), and 8.4(c), as well as Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR). When Muenchrath failed to cooperate with the director's investigative efforts, the director filed a petition for disciplinary action. Muenchrath failed to interpose an answer and we granted

---

18. *See Eriksen,* 337 N.W.2d at 674.

19. *See First Nat'l Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981).

the director's motion for summary relief, thereby deeming the director's allegations admitted. We must now determine the appropriate discipline to be imposed. We indefinitely suspend Muenchrath from the practice of law.

Muenchrath has been licensed to practice law in the State of Minnesota since May 13, 1994. He is not currently practicing law in Minnesota, and his license was suspended on July 8, 1998 for nonpayment of attorney registration fees. The director's first count of misconduct against Muenchrath involves Muenchrath's performance on two client matters. The second count of misconduct concerns Muenchrath's noncooperation with the director's investigation of those two client matters.

## A. First Count—Client Matters

Both client matters at issue involve Muenchrath's representation of immigrants petitioning to remain in the United States. The acts of misconduct occurred while Muenchrath was a staff attorney with the Lao Family Community of Minnesota. Muenchrath became employed with the Lao Family Community in the spring of 1995.

### 1. Ken Veu

In 1996, Muenchrath assumed representation responsibilities for Ken Veu in an asylum/withholding of deportation matter. Muenchrath represented Veu at an April 15, 1996 hearing at which Veu's asylum petition was denied. At that hearing, the immigration court judge offered Veu the opportunity to either appeal the ruling and be given three to six months for voluntary departure or agree to an 18-month voluntary departure date, wait to reach priority status, and then petition to stay in the United States. Muenchrath advised Veu to agree to voluntary departure in 18 months because it appeared that Veu would reach priority status within one year.

After Veu reached priority status in November 1996, a social manager at the International Institute in Akron, Ohio discussed Veu's priority status with Muenchrath and also advised Veu which forms to fill out in order to complete the process that would

allow him to remain in the United States. Veu went to see Muenchrath on November 20, 1996 and obtained the necessary forms. On January 23, 1997, Veu met with Muenchrath and asked him to write a letter to follow up on the documents Veu had completed. Muenchrath refused to write the letter and instead told Veu to take the documents to the Immigration and Naturalization Service (INS) office himself. Veu went to the INS office on January 27, 1997, at which time he was told that notice of his priority status had not arrived.

The social manager from the Akron International Institute then spoke with Veu, telling him that his priority status was at the INS office, but under the "filed date," not the "approved date." The social manager told Veu to have Muenchrath call the INS manager for confirmation. On January 28, 1997, Veu discussed his priority status with Muenchrath and gave Muenchrath the social manager's telephone number. After Muenchrath failed to return four of Veu's telephone calls in early February, Veu went to Muenchrath's office and made an appointment for February 12.

When Veu saw Muenchrath on February 12, he gave Muenchrath all of his documents, an $850 check for the INS filing fee, and $200 for a shipping fee. Thereafter, Veu regularly called Muenchrath to check on the status of the documents. Muenchrath did not return many of Veu's calls and at other times asked Veu to call back later. On the few occasions when Muenchrath did speak with Veu, he assured Veu that he was working on resolving Veu's priority status.

In the fall of 1997, Veu's agreed-upon voluntary departure date was fast approaching. When Veu called Muenchrath on September 30, 1997, the receptionist at Lao Family Community told Veu, "if you want to see [Muenchrath], come and wait at the door." On October 1, 1997, Veu and attorney Fue Vue did wait at Muenchrath's door. When Muenchrath arrived, he told Veu and Vue that the immigration court had approved a six-month extension of Veu's voluntary departure date and promised to get a copy of that order and Veu's extended work permit

from the INS that afternoon. For two weeks thereafter, Veu repeatedly left messages for Muenchrath, but Muenchrath returned none of Veu's calls.

On October 16, 1997, Muenchrath again met with Veu. During this meeting, Muenchrath gave Veu a letter, signed by Muenchrath, stating that Veu had been granted extensions of his voluntary departure date and his work permit. The statements in this letter were false and Muenchrath knew them to be false. Muenchrath also promised Veu that he would call the INS that day to obtain verification of the extension for Veu's employer.

Veu met with Muenchrath again on November 3, 1997 and asked to have his file returned to him. Muenchrath falsely told Veu that the file was not in the office. When Veu received his file on November 7, it contained nothing other than the work performed by the attorney who had handled Veu's case prior to Muenchrath and by Veu himself. Except for appearing at Veu's April 15, 1996 hearing, Muenchrath had done no work on Veu's file in the more than 18 months he had represented Veu. The documents which Veu had prepared for mailing to the INS in January 1997 had never been filed and were not in Veu's file. Because no action had been taken on Veu's case during the 18 months since his April 1996 hearing, the INS had closed Veu's file and referred his case to the deportation office.

### 2. Chai Moua

Muenchrath represented Chai Moua in an immigration matter during 1997. Moua was scheduled to appear at a deportation hearing on December 24, 1997. Muenchrath told Moua that the hearing had been postponed and that Moua need not appear. In fact, the hearing had not been postponed. Because neither Muenchrath nor Moua appeared at the hearing, the court issued an *in absentia* deportation order.

Moua subsequently filed a motion with the immigration court to re-open and rescind the *in absentia* deportation order. The INS district counsel obtained an administrative subpoena from the immigration court to compel Muenchrath's attendance at Moua's motion hearing, which was scheduled for March 18, 1998. This subpoena was personally served upon Muenchrath on March 7, 1998. Muenchrath did not attend the hearing and took no action to quash the subpoena or otherwise excuse himself from attending.

The immigration court judge continued the hearing to June 8, 1998 and referred the matter of Muenchrath's noncompliance with the subpoena to the United States Attorney's office for judicial enforcement. Muenchrath was arrested and brought before a federal district court judge, where Muenchrath agreed to attend the June 8 immigration court hearing. Nevertheless, Muenchrath did not attend the hearing and did not provide any explanation for his failure to appear.

Moua's immigration court hearing was then continued to June 29, 1998. After intervention by, and with the urging of, the director, Muenchrath appeared by telephone at this hearing. During the hearing, Muenchrath admitted under oath that he had lied to Moua.

### B. Noncooperation

Muenchrath is also charged with noncooperation with the director's investigation of the Veu and Moua matters. On January 20, 1998, the director mailed to Muenchrath a notice of investigation based on a complaint filed by Veu. On May 4, 1998, the director mailed to Muenchrath a notice of investigation based on a complaint filed by Moua. Each notice requested Muenchrath's written responses to the Second Judicial District Ethics Committee (DEC) investigator's inquiries within 14 days of the date of the notice. Muenchrath has not responded to either notice.

In early June 1998, the DEC investigator attempted to contact Muenchrath, reached his wife instead, and asked her to have Muenchrath call him. Muenchrath called the investigator on June 10, 1998 and requested an additional copy of the notice of investigation and Veu's complaint that had been filed against him. Muenchrath advised the investigator that he would stop by the investigator's office the next afternoon to pick up the requested copies. Muenchrath never ap-

peared at the investigator's office to pick up the copies and never called to explain his failure to do so.

Muenchrath was hospitalized in Iowa on June 12, 1998, following an automobile accident. In July 1998, the director learned that Muenchrath was residing with family members in Des Moines, Iowa. The director spoke with Muenchrath by telephone on July 9 and 21, 1998. During those conversations, Muenchrath stated that he had received the notices of investigation and that he intended to cooperate with the investigation. The July 21, 1998 telephone call was the last contact between Muenchrath and the director.

In his brief and at oral argument, the director stated that, during the July telephone conversations, Muenchrath stated he was under the care of a doctor. The director stated that Muenchrath provided the director with the name of his doctor, the name of the hospital where he was being treated, and promised to fax a medical release to the director the next day. However, Muenchrath did not fax a medical release and the hospital where Muenchrath claimed he was being treated has no record of a doctor by the name given to the director.

On August 10, 1998, the director mailed documents to Muenchrath at his Des Moines, Iowa address, charging him with unprofessional conduct and notifying him of a prehearing meeting set for September 10, 1998. The charges and notice, which were sent by certified mail, return receipt requested, were returned to the director by the post office as unclaimed. Subsequently, on September 3, 1998, the director mailed, by regular mail, copies of the charges and notice of prehearing meeting to Muenchrath's last three known addresses—the address listed on his attorney registration records, his Des Moines address, and his last-known Minnesota residence. The charges and notice that were mailed to Muenchrath's attorney registration address were returned as undeliverable. The charges and notice sent to the other two addresses have not been returned. Nevertheless, Muenchrath did not appear at the September 10 prehearing meeting.

Based on Muenchrath's noncooperation with the investigations and pursuant to Rule 10(d) of the RLPR, the director moved to bypass proceedings before a panel of the Lawyers Professional Responsibility Board. The panel chair approved the director's motion, thereby allowing the director to file a petition for disciplinary action. The director's petition for disciplinary action was personally served upon Muenchrath on September 30, 1998. On November 2, 1998, after Muenchrath failed to answer the petition, the director served and filed a motion for summary relief. We granted the motion on November 23, 1998. Although proposals for the appropriate discipline to be imposed were due from the director and Muenchrath by December 16, 1998, Muenchrath has not filed a proposal. The director recommends that we indefinitely suspend Muenchrath from the practice of law.

## I.

The director's allegations against Muenchrath have been deemed admitted pursuant to Rule 13(b) of the RLPR. Therefore, Muenchrath has violated Rules 1.3, 1.4, 1.15(b), 4.1, 8.1(a)(3), and 8.4(c) of the Minnesota Rules of Professional Conduct, and Rule 25 of the RLPR. Accordingly, the only question remaining before us is the appropriate discipline to be imposed on Muenchrath for these violations.

The purpose of attorney discipline is to protect the courts, the public, and the legal profession, as well as to guard the administration of justice. *In re Madsen*, 426 N.W.2d 434, 435 (Minn.1988). In addition, "[w]e have long recognized that it is imperative that an attorney cooperate with disciplinary authorities in their investigation and resolution of complaints against the lawyer." *In re Engel*, 538 N.W.2d 906, 907 (Minn.1995) (citation omitted). In determining the appropriate discipline to be imposed, we consider: (1) the nature of the misconduct, (2) the cumulative weight of the rule violations, (3) the harm to the public, and (4) the harm to the legal profession, often looking to cases involving similar misconduct in order to impose appropriate and fair sanctions. *In re Bishop*, 582 N.W.2d 261, 263 (Minn.1998). In prior cases, we have typically imposed indefi-

nite suspension on attorneys who engage in patterns of neglect, noncommunication, and misrepresentation to clients and, in addition, fail to cooperate with a disciplinary investigation and proceedings. *See, e.g., Bishop,* 582 N.W.2d at 261; *In re Jensen,* 418 N.W.2d 721 (Minn.1988); and *In re Rockne,* 375 N.W.2d 28 (Minn.1985).

In *Bishop,* an attorney neglected four client matters by failing to file documents with the court, failing to return client telephone calls, and failing to appear on behalf of his clients. *Bishop,* 582 N.W.2d at 261–62. The attorney also failed to return his clients' files and property upon the clients' requests, made misrepresentations, and failed to cooperate with the director's investigation by failing to respond to the director's requests for information and not appearing at the scheduled prehearing meeting. *Id.* at 261–63. We suspended the attorney indefinitely. *Id.* at 264.

In *Jensen,* an attorney neglected two client matters by failing to record a warranty deed for six months, telling his client's new attorney that the warranty deed had been recorded six months earlier than it had been recorded, and failing to pursue another client's personal injury claim. *Jensen,* 418 N.W.2d at 721–22. In addition, the attorney practiced law while his license was suspended for nonpayment of attorney registration fees and failed to cooperate with the director's investigation by failing to provide written responses to inquiries from an investigator, failing to respond to the director's letters, and failing to appear at scheduled meetings or the prehearing meeting. *Id.* We also suspended this attorney indefinitely. *Id.* at 723.

In *Rockne,* an attorney failed to pursue his client's personal injury claim for over a year, refused to return the client's file so another attorney could pursue the matter, and failed to return telephone calls from both his client and the opposing party's insurance company. *Rockne,* 375 N.W.2d at 29. The attorney also failed to cooperate with the director's investigation by failing to respond to the director's investigation requests or to appear at scheduled meetings, including the prehearing meeting. *Id.* at 29–30. Again, we suspended this attorney indefinitely. *Id.* at 30.

As in *Bishop, Jensen,* and *Rockne,* Muenchrath neglected client matters and failed to cooperate with the director's investigation. In the matter of Veu, Muenchrath performed no work on Veu's file for over 18 months, misrepresented to Veu that Veu had been granted an extension of his voluntary departure date and on his work permit, failed to file the documents that Veu had given him, and did not return Veu's telephone calls. As a result of Muenchrath's unprofessional conduct, Veu's case was referred to the deportation office.

In the matter of Moua, Muenchrath falsely told Moua that Moua's deportation hearing had been rescheduled, which resulted in the immigration court ordering Moua's deportation *in absentia;* failed to comply with a subpoena; and failed to appear at another hearing even after he was arrested, brought before a federal district judge, and ordered to appear at the hearing. When Muenchrath finally did appear by telephone, he admitted under oath that he had lied to Moua about Moua's initial deportation hearing being rescheduled.

It is undisputed that Muenchrath's unprofessional conduct threatened Veu and Moua with a most perilous fate. It was only through the intervention of others that Veu and Moua escaped deportation. In the noncooperation matter, Muenchrath failed to provide written responses to the DEC investigator's inquiries, did not pick up copies of the charges against him, failed to appear at his prehearing meeting, failed to cooperate with the director's attempts to verify that he was under a doctor's care, and did not submit a response to the director's petition for disciplinary action and motion for summary relief or a proposal regarding appropriate discipline. Muenchrath's complete neglect of his clients' interests and his failure to cooperate with the director's investigation represents egregiously unprofessional conduct—the type of conduct that is properly condemned by this court and the entire profession.

We conclude that the appropriate discipline to be imposed on Muenchrath for his unprofessional conduct is indefinite suspen-

sion from the practice of law. Accordingly, we order:

that respondent, Robert Paul Muenchrath, is hereby indefinitely suspended from the practice of law pursuant to Rule 15(a)(2), RLPR;

that Muenchrath comply with the requirements of Rule 26, RLPR;

that Muenchrath shall pay to the director a sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.