In re Petition for DISCIPLINARY ACTION AGAINST Jeremy Martin MONROE, an Attorney at Law of the State of Minnesota.

No. C6–01–1782.

Supreme Court of Minnesota.

April 24, 2003.

Kenneth L. Jorgensen, Director, Betty M. Shaw, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Petitioner.

Seamus Mahoney, St. Paul, MN, for Respondent.

PER CURIAM.

## OPINION

In this attorney discipline proceeding, we determine the appropriate sanction for an attorney abandoning a client and refusing to cooperate with the Director of the Office of Lawyers Professional Responsibility (Director).

After working as a banker, Jeremy Monroe attended law school and was admitted to practice law in Minnesota in May of 1997. The present disciplinary action against Monroe stems from his representation of Kelly Mortensen in her divorce. The Director reports that Mortensen paid Monroe a $2,600 retainer in 1998. Monroe neglected to inform Mortensen that she needed to appear at a pretrial conference on June 21, 2000, in district court. The court rescheduled the hearing for October 4, 2000.

Monroe conducted no discovery in the case and did not respond to Mortensen's repeated attempts to contact him about her case during the summer and fall of 2000. Mortensen attended her October 4, 2000, hearing, but Monroe was not there. Eventually Mortensen discovered that Monroe had closed his law practice and moved to Park Rapids, Minnesota. Mortensen hired a new attorney who had to reconstruct her file from court records because Monroe did not respond to requests for her file and an accounting of her retainer.

A referee of Ramsey County Family Court complained of Monroe's conduct to the Director after Monroe failed to appear at the October 4, 2000, hearing. Monroe

did not respond to letters from the District Ethics Committee or the Director. Charges of unprofessional conduct were served upon Monroe on August 3, 2001. After promising to answer the charges, Monroe failed to do so, and failed to attend an August 24, 2001, prehearing meeting. The Director reports that Monroe also failed to respond to the Director's motion to the panel chair for authority to file a petition for disciplinary action under Rule 10(d), Rules on Lawyers Professional Responsibility (RLPR).

In October of 2001, the Director served a petition for disciplinary action against Monroe. Monroe did not answer the petition, but his counsel phoned the Director's office in November of 2001 requesting more time. The Director granted the request; however, no answer had been filed by February of 2002. The Director moved for summary relief on February 7, 2002. This court granted the summary relief motion on February 25, 2002, and agreed to consider the question of the appropriate discipline for Monroe.

Before this court could hear the matter, the Director withdrew his request for summary relief because Monroe had contacted the Director's office. Monroe's counsel had communicated that Monroe was suffering from depression and was attempting to get treatment. The Director informs us that on March 23, 2002, Monroe sent the Director a letter that accounted for Mortensen's $2,600 retainer, and refunded her $1,000. The Director verified Monroe's diagnosis and treatment, and tendered a stipulated disposition of this matter. Monroe did not execute the stipulation. Monroe then left his employment at a Park Rapids bank, stopped receiving treatment for depression, and ceased communicating with his attorney.

On November 25, 2002, the Director renewed his motion for summary relief, and this court granted the motion on December 16, 2002. Pursuant to this court's order, Monroe is deemed to have admitted violating Rules 1.3 (acting with diligence and promptness in representing a client), 1.4 (complying with a client's reasonable requests for information), 1.15(b) (providing clients an accounting of their funds), 1.16(d) (surrendering the client's papers, property, and any unearned portion of advance upon termination of representation), and 8.4(d) (misconduct that is prejudicial to the administration of justice), of the Minnesota Rules of Professional Conduct, by abandoning his client, Ms. Mortensen. Monroe is also deemed to have admitted violating Rule 8.1(a)(3) (failing to respond to a discipline authority's demand for information), of the Minnesota Rules of Professional Conduct, and Rule 25 (failing to cooperate with the District Committee, Director, etc.), RLPR, by refusing to cooperate with the Director. The only issue before the court is the appropriate discipline for Monroe. For the public's protection, the Director requests indefinite suspension with reinstatement by petition under Rules 18(a)-(d), RLPR.

This court considers four factors in determining the appropriate discipline to impose on an attorney: "(1) the nature of the misconduct, (2) the cumulative weight of the rule violations, (3) the harm to the public, and (4) the harm to the legal profession." *In re Muenchrath*, 588 N.W.2d 497, 500 (Minn.1999). The court frequently looks to cases involving similar misconduct to determine an appropriate sanction. *Id.*

Indefinite suspension has been considered an appropriate sanction in analogous cases. In *In re Geiger*, this court noted that "[e]ven in cases where an attorney is involved in only one instance of client neglect, when that neglect is combined with other violations we have often suspended

or disbarred the attorney." 621 N.W.2d 16, 23 (Minn.2001). And in *In re Engel*, this court was faced with noncooperation by an attorney with a prior disciplinary history and said "the failure to cooperate is viewed as an act of misconduct warranting an indefinite suspension from the practice of law." 538 N.W.2d 906, 907 (Minn.1995).

*In re Pucel,* 588 N.W.2d 741 (Minn. 1999), involves the most similar facts to those of the instant case. Attorney Cherylyn Pucel had accepted $3,500 as a retainer and advance from a prisoner who wanted to bring a postconviction appeal. Pucel did not put the money in a trust account, and neither worked on the case nor responded to communications from the prisoner. Pucel repeatedly failed to reply to communications from the Director regarding the client complaint. *Id.* at 742. Like Monroe, she failed to appear at the prehearing meeting, and did not answer the petition for disciplinary action. *Id.* This court indefinitely suspended Pucel from the practice of law. *Id.* at 743.

■ This court has recognized depression can be a mitigating factor in determining the appropriate discipline. *See In re Weyhrich,* 339 N.W.2d 274, 278–79 (Minn.1983). An attorney must prove he or she has a severe psychological problem, that the problem caused the misconduct, that he or she is receiving treatment and making progress, and that the misconduct has stopped and is not likely to recur. *Id.* at 279. However, Monroe has not satisfied his burden of establishing the necessary criteria by clear and convincing evidence because he has not responded to any of the Director's allegations and has not made a case for mitigating illness. *Compare In Re Bergstrom,* 562 N.W.2d 674, 676–78 (Minn.1997) (in which Bergstrom successfully argued that his recovery from depression had arrested his misconduct, and

this court stayed his indefinite suspension subject to a number of conditions).

■ Having considered the most instructive cases, we hold that the appropriate disciplinary action for an attorney's complete abandonment of a client and refusal to cooperate with the Office of Lawyers Professional Responsibility, without mitigating factors, is an indefinite suspension. Accordingly we order that:

1. Monroe is suspended from the practice of law indefinitely, commencing fourteen days from the date of this order. Notice of this suspension shall be mailed both to Monroe at his last known address and his counsel of record.

2. In order to be reinstated, Monroe must comply with the requirements of Rules 18(a)-(d), RLPR.

3. Monroe shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.