In re Petition for DISCIPLINARY ACTION AGAINST Ernest E. CUTTING, a Minnesota Attorney, Registration No. 20576.

No. A03–926.

Supreme Court of Minnesota.

Nov. 20, 2003.

Kenneth L. Jorgensen, Director, Martin A. Cole, First Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Appellant.

Ernest E. Cutting, Minneapolis, MN, Pro Se.

## OPINION

PER CURIAM.

Respondent, Ernest E. Cutting, has been licensed to practice law in Minnesota since October 16, 1968. In a Petition for Disciplinary Action (Petition) filed on July 16, 2003, the Director of the Office of Lawyers Professional Responsibility (Director) alleged that Cutting engaged in a pattern of misconduct involving 14 separate clients by "failing to timely file probate annual reports, affidavits of mailing, and receipts with the probate court and failing to promptly comply with probate orders" in violation of Rules 1.3, 3.4(c), and 8.4(d) of the Minnesota Rules of Professional Conduct (MRPC). In addition, the Petition alleged that Cutting failed to cooperate with the Director's investigation into the misconduct in violation of Minn. R. Prof. Conduct 8.1(a)(3) and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR).[1] Subsequent to the Petition, Cutting failed to serve or file an answer to the Petition and, by order filed August 7, 2003, this court, pursuant to Rule 13(b), RLPR, deemed the allegations contained in the Petition admitted. The Director recommends that Cutting be indefinitely suspended from the practice of law.

■ In 1987, Cutting was suspended from the practice of law for 30 days and placed on two years' supervised probation for mismanagement of a guardianship estate and failure to cooperate with the disciplinary proceedings. *In re Cutting,* 413 N.W.2d 505, 506 (Minn.1987).

■ Because the allegations contained in the Petition have been deemed admitted, the only issue this court must resolve is the appropriate discipline to be imposed on Cutting. The purpose of lawyer discipline is to protect the courts, the public, and the legal profession, and to guard the proper administration of justice. *In re Bishop,* 582 N.W.2d 261, 263 (Minn. 1998). This court considers four factors in determining the appropriate discipline: "(1) the nature of the misconduct, (2) the cumulative weight of the rule violations, (3) the harm to the public, and (4) the harm to the legal profession." *In re Muenchrath,* 588 N.W.2d 497, 500 (Minn.1999). While this court may turn to cases involving similar misconduct in determining the appropriate discipline, each case is decided on its unique facts and circumstances. *In re Brehmer,* 642 N.W.2d 431, 433 (Minn. 2002).

■ Neglect in handling probate matters is considered serious professional misconduct. *In re Braseth,* 352 N.W.2d 22, 23 (Minn.1984). Typically, this court imposes an "indefinite suspension in cases involving a continued pattern of client neglect when no evidence of mitigating circumstances is present." *In re Geiger,* 621 N.W.2d 16, 23 (Minn.2001). In *Braseth,* a lawyer who seriously neglected five estate matters was indefinitely suspended for a minimum of two years. 352 N.W.2d at 23–24. In *In re Olson,* a lawyer who neglected 15 estates and submitted forged receipts to the court was suspended for six months with the understanding that he would retire thereafter. 442 N.W.2d 782, 783 (Minn.1989). Here, unlike *Braseth,* Cutting's neglect did not harm his clients financially. Yet, in the matters where Cutting served as the lawyer for a guardian or conservator, his

---

**1.** The specific allegations as set out in the Petition can be found in the appendix accompanying this opinion.

clients were harmed by his neglect in that citations to appear were sent to them and they faced the possibility of further punishment if Cutting continued to neglect his duties. Further, as the Comment to Minn. R. Prof. Conduct 1.3 points out, procrastination may be the most widely resented fault in the profession. Cutting's neglect harms the profession as a whole. Cutting's neglect also led to the waste of judicial resources as the probate court was repeatedly forced to "baby-sit" Cutting to get him to perform his duties.

This court has disciplined lawyers who failed to comply with court orders and failed to appear at hearings. *In re Haugen*, 373 N.W.2d 600, 600–01 (Minn.1985) (ordering a public reprimand and two years' supervised probation for misconduct that included failing to comply with a discovery order and failing to appear for a hearing); *In re Truelson*, 427 N.W.2d 674, 674 (Minn.1988) (ordering an indefinite suspension for misconduct that included failing to comply with discovery requests and court orders and failing to cooperate with the disciplinary investigation).

■ Cutting's misconduct is exacerbated by the fact that he has not cooperated with the Director's investigation into his misconduct. Indeed, the failure to cooperate with the disciplinary process constitutes misconduct warranting discipline independent from the conduct underlying the Petition. *In re Engel*, 538 N.W.2d 906, 907 (Minn.1995); *see also In re Thedens*, 557 N.W.2d 344, 349 (Minn.1997) (stating that failing to attend a panel meeting was at least as serious a violation as failing to attend a prehearing meeting and merited a suspension). In *Engel*, this court noted the importance of cooperating and stated that the lawyer's failure to cooperate "greatly hampered the investigatory efforts and demonstrates respondent's failure to acknowledge either the seriousness

of the proceeding or her disregard for her basic obligations as an attorney or a present inability to deal with any consequences for her actions." 538 N.W.2d at 907. The same can be said for Cutting's failure to cooperate. In *Engel*, this court held that the failure to cooperate warranted an indefinite suspension from the practice of law. *Id.*

This court also notes that previous misconduct of the same type is considered an aggravating factor when determining the appropriate discipline. *In re Bernard*, 534 N.W.2d 272, 276–77 (Minn.1995); *In re Getty*, 452 N.W.2d 694, 698 (Minn.1990). This court has imposed more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined. *In re Thedens*, 602 N.W.2d 863, 867 (Minn.1999). In fact, this court has held that suspension followed by probation or disbarment is a proper sanction when the misconduct in the second case is a virtual repeat of the earlier misconduct. *Getty*, 452 N.W.2d at 698. In this case, Cutting was previously disciplined for mismanaging and mishandling an estate and failing to cooperate with the disciplinary process. *Cutting*, 413 N.W.2d at 505–06. The nature of his current misconduct is similar to that earlier misconduct.

Based on the record before us, we conclude that Cutting has engaged in serious misconduct warranting discipline. Therefore, we order that effective 20 days from the date of this order Edward E. Cutting be indefinitely suspended from the practice of law, pay $900 in costs and disbursements pursuant to Rule 24, RLPR, and comply fully with Rule 26, RLPR. If Cutting seeks reinstatement, he shall also comply fully with Rule 18, RLPR, and, if reinstated, he shall be placed on supervised probation for a period of two years.

*APPENDIX*

The allegations as set out in the Petition are as follows:

### FIRST COUNT

1. On August 1, 2002, Judge Michael T. DeCourcy filed a complaint against respondent.

2. Based upon the subsequent investigation, the Director has determined the following: Respondent serves as Guardian, Conservator or Personal Representative in numerous Ramsey County Probate court matters. Respondent also serves as attorney for the Guardian, Conservator or Personal Representative in other matters.

3. Pursuant to Minnesota Statute[s] § 525.58, respondent in his fiduciary capacities is obligated to annually file Annual Accounts, a Notice of Right to Petition (Notice) and other reports regarding the ward, conservatee or estate.

4. Respondent neglected numerous probate court matters and failed to comply with statutory obligations, as follows:

A. *Respondent Serves As Guardian or Conservator*

**Elaine K. Cooper**

5. On July 25, 1990, the probate court issued an order appointing respondent general conservator of the person and estate of Elaine K. Cooper. Respondent failed to timely file the 7th Annual Account on or before August 24, 1998. The probate court notified respondent on September 14 and again on October 19, 1998, that he had failed to timely file the 7th Annual Account, Annual Notice of Rights and Personal Well Being Report.

6. On December 17, 1998, the court issued a citation to respondent to personally appear on January 12, 1999, to show cause why the documents had yet to be filed. Respondent filed the documents on January 12, 1999.

7. Respondent failed to timely file the 8th Annual Account on or before August 24, 1999. On September 13 and again on October 26, 1999, the probate court notified respondent that he had failed to timely file the 8th Annual Account, Annual Notice of Rights and Personal Well Being Report.

8. On December 13, 1999, the court issued a citation to respondent to personally appear on January 26, 2000, to show cause why the annual documents had yet to be filed. Respondent appeared at the January 26, 2000, hearing and filed the documents.

9. Respondent failed to timely file the 9th Annual Account on or before August 24, 2000. On September 11 and October 16 and/or 17, 2000, the probate court notified respondent that he had failed to timely file the 9th Annual Account, Annual Notice of Rights and Personal Well Being Report.

10. On November 30, 2000, the court issued a citation to respondent to personally appear on January 24, 2001, to show cause why the annual documents had yet to be filed. Respondent appeared at the January 24, 2001, hearing and filed the documents.

11. On March 5, 2001, the court held a hearing for the examination of the 8th and 9th Annual Accounts. The accounts were allowed subject to the filing of the Affidavit of Mailing of the Notice Setting the Time and Place for the Examination of the Account.

12. On March 12 and April 17, 2001, the probate court notified respondent that he had failed to timely file the Final Account as Ms. Cooper died on December 23, 2000. Respondent failed to file the documents. The court issued a citation on May

25, 2001, to respondent to personally appear on June 27, 2001, and show cause why the Final Account was delinquent. Respondent filed the Final Account on May 31, 2001.

13. On May 31, 2001, the court issued a Notice and Order Fixing the Time and Place of the Hearing as July 9, 2001. On July 9, 2001, the court held a hearing to examine the Final Account. The court granted the final account and discharged respondent as the conservator subject to the filing of receipts for assets. The court directed respondent to file the receipts.

14. On August 13 and October 4, 2001, the probate court sent written requests to respondent to file the receipts for assets. Respondent failed to file the requested receipts. On January 18, 2002, the probate court issued a citation to respondent to personally appear on March 27, 2002, to show cause why the receipts for the assets had yet to be filed.

15. Respondent appeared at the March 27, 2002, hearing before the probate court but failed to file the asset receipts. The court continued the citation hearing to April 30, 2002. The court also set a hearing to surcharge respondent's bond.

16. The April 30, 2002, citation hearing was continued to May 28, 2002, to allow respondent to provide asset receipts or present testimony as to what happened to the assets. On April 30, 2002, the probate court sent a notice of the May 28, 2002, hearing to respondent.

17. Respondent failed to appear at the May 28, 2002, hearing. The court requested a Notice of a Writ of Attachment for respondent and set bail at $100. On June 6, 2002, the Notice of Writ of Attachment was sent to respondent.

18. On June 12, 2002, respondent telephoned the probate court to reschedule the hearing to June 17, 2002. Respondent filed the receipt for the assets and a Petition for Discharge of Conservator at the time of the June 17, 2002, hearing. The court cited respondent for failure to timely file the receipts for the assets. It was determined by the court pursuant to the heirs' receipts for assets that respondent never held any assets of the estate.

19. Respondent was discharged as conservator on November 8, 2002.

**Margaret A. Hockert**

20. On August 9, 1983, the probate court appointed respondent general conservator of the person and estate of Margaret A. Hockert. Ms. Hockert died on May 23, 2000. Respondent failed to timely file the 17th and Final Accounts on August 9, 2000. On September 18, October 23 and 31, 2000, the probate court issued notices to respondent to file the 17th Annual Account and accompanying documentation.

21. On December 13, 2000, the probate court issued respondent a citation to personally appear on January 24, 2001, to show cause why the documents had yet to be filed. Respondent appeared at the January 24, 2001, hearing and was granted an extension to file the annual reports in one week. Respondent failed to file the reports.

22. On February 15, 2001, the probate court manager wrote to respondent and requested the reports be filed immediately. Respondent was also placed on notice that his pattern of filing late reports was sufficient grounds for filing an ethics complaint. Respondent failed to file the annual reports.

23. On March 21, 2001, the probate court issued respondent a citation to personally appear on April 9, 2001, and show cause why the documents had yet to be filed and why the court should not remove respondent as conservator and find re-

spondent in contempt of court. The citation, which was sent to respondent by certified mail, return receipt requested, was unclaimed by respondent and returned to the probate court.

24. Following the April 9, 2001, hearing respondent was directed to file the annual reports within two weeks. Respondent failed to file the annual reports. On April 13, 2001, the court notified respondent that he had yet to file the annual reports as directed by the court. Respondent was directed to file the documents immediately. Respondent filed the Final Account on May 7, 2001.

25. Pursuant to order filed June 6, 2001, the court allowed the Final Account. Respondent's petition for discharge was not granted but was subject to filing the receipts for assets.

26. On July 10, 2001, the probate court requested respondent to file the receipts for assets for the balance of cash on the Final Account. Respondent was requested to file the receipts on or before August 1, 2001. Respondent failed to file the receipts. On August 13, 2001, the court made a second request for the cash receipts to be filed with the court by September 4, 2001. Respondent again failed to comply with the court's requests.

27. On October 8, 2001, the probate court issued respondent a citation to personally appear on October 24, 2001, to show cause why the receipts for assets had yet to be filed. At the October 24, 2001, hearing respondent failed to file the requested receipts as provide[d] by the court. The court granted a 30–day extension to file the receipts as the life insurance policy had yet to be collected.

28. On January 16 and February 26, 2002, the probate court sent notices to respondent to file the receipts for assets.

Respondent failed to comply with the court's requests. On April 8, 2002, the probate court issued respondent a citation to personally appear on April 30, 2002, to show cause why the receipts for assets had not been filed. On April 30, 2002, the citation hearing was continued to May 28, 2002, to allow respondent to file the receipts for assets and present additional testimony.

29. The probate court issued a writ of attachment after respondent failed to appear at the May 28, 2002, citation hearing and continued the matter to June 17, 2002. On June 11, 2002, respondent filed the receipts for assets and a Petition for Discharge of Conservator.

30. At the June 17, 2002, hearing respondent was cited for failure to file the receipts for assets. The probate court also granted respondent's Petition for Discharge.

### Scott T. Dewald

31. On January 4, 1990, respondent was appointed general guardian of the person and estate of Scott T. Dewald.

32. Respondent failed to timely file the 12th Annual Account on February 3, [2002]. On February 25 and April 2, 2002, the probate court sent notices requesting respondent file the 12th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent failed to comply with the court's requests.

33. On May 8, 2002, the court issued a citation to respondent for failure to file the 12th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent was cited and required to personally appear on June 19, 2002, before the probate court to show cause why the documents had not been filed.

34. The court struck the hearing upon receipt as the 12th Annual Account and citation had crossed in the mail.

## Betty L. Young

35. On October 25, 1983, respondent was appointed general conservator of the person and estate of Betty L. Young. Respondent failed to timely file the 12th Annual Account on or before November 24, 1995. On November 8 and December 5, 1995, the probate court sent notices to respondent requesting he file the delinquent 12th Annual Account, Personal Well Being Report and Annual Notice of Rights. Respondent failed to comply.

36. On February 12, 1996, the probate court issued respondent a citation to personally appear on March 12, 1996, to show cause why the 12th Annual Account and accompanying documents had not been filed. Respondent filed the delinquent annual account on March 7, 1996. Pursuant to court order dated April 16, 1996, the 12th Annual Account was allowed.

37. Respondent failed to timely file the 14th Annual Account on or before November 24, 1997. On December 8, 1997, and January 12, 1998, the probate court sent notices to respondent requesting he file the delinquent 14th Annual Account, Personal Well Being Report and Annual Notice of Rights. Respondent failed to comply.

38. On February 25, 1998, the probate court issued a citation to respondent to personally appear on March 24, 1998, to show cause why the 14th Annual Account and accompanying documents had not been filed. The March 24, 1998, citation hearing was continued to April 28, 1998. Respondent filed the delinquent annual account on March 24, 1998. Pursuant to court order dated April 14, 1998, the 14th Annual Account was allowed.

39. Respondent failed to timely file the 16th Annual Account on or before November 24, 1999. On December 6, 1999, and January 11, 2000, the probate court sent notices to respondent requesting he file the delinquent 16th Annual Account, Personal Well Being Report and Annual Notice of Rights. Respondent failed to comply.

40. On February 16, 2000, the probate court issued respondent a citation to personally appear on March 22, 2000, to show cause why the 16th Annual Account and accompanying documents had not been filed. Respondent filed the 16th Annual Account on March 1, 2000, and the court struck the March 22, 2000, citation hearing.

41. Respondent failed to timely file the 17th Annual Account. On December 4, 2000, and January 11, 2001, the probate court sent notices to respondent requesting he file the delinquent 17th Annual Account. Respondent failed to comply. On February 16, 2001, the probate court issued respondent a citation to personally appear on March 28, 2001, to show cause why the 17th Annual Account and accompanying documents had not been filed. Respondent filed the 17th Annual Account on March 9, 2001. Respondent was present at the March 28, 2001, citation hearing. Pursuant to court order dated April 24, 2001, the court allowed the 17th Annual Account.

42. Respondent filed to timely file the 18th Annual Account on or before November 24, 2001. On December 10, 2001, and January 15, 2002, the probate court sent notices to respondent requesting he file the delinquent 18th Annual Account, Personal Well Being Report and Annual Notice of Rights. Respondent failed to comply.

43. On February 25, 2002, the probate court issued respondent a citation to personally appear on March 27, 2002, to show cause why the 18th Annual Account and accompanying documents had not been

filed. Respondent appeared at the March 27, 2002, citation hearing and filed the 18th Annual Account. The 18th Annual Account was allowed pursuant to court order filed May 6, 2002.

### Marion H. Carlson

44. On October 9, 1985, respondent was appointed general conservator of the estate of Marion H. Carlson. Respondent failed to timely file the 14th Annual Account on or before November 8, 1999. On November 22 and December 28, 1999, the probate court sent notices to respondent directing him to file the 14th Annual Account, Annual Notice of Rights, [and] Personal Well Being Report. Respondent failed to timely file the documents with the court.

45. On February 8, 2000, the probate court cited respondent and required him to personally appear before the court on March 22, 2000, and show cause why the documents had not been filed. Respondent filed the documents on March 2, 2000. On March 9, 2000, the probate court's citation to respondent, sent by certified mail, was returned by the post office as unclaimed.

46. On April 3, 2000, the 14th Annual Account came on for hearing. The court was unable to review the matter as scheduled due to respondent's failure to file the affidavit of mailing which signifies that he notified interested parties of the [] time and place of the hearing. Thereafter, on April 3, 2000, the court wrote to respondent and requested he file the affidavit of mailing. Respondent filed the affidavit of mailing on April 14, 2000. The court allowed the 14th Annual Account on April 14, 2000.

47. Respondent failed to timely file the 15th Annual Account on November 9, 2000. On November 20 and December 27, 2000, the probate court sent notices to respondent requesting him to file the 15th Annual Account, Personal Well Being Report and Annual Notice of Rights. Respondent failed to file the documents.

48. On February 12, 2001, the probate court issued a citation to respondent and required him to personally appear before the court on March 28, 2001, to show cause why the documents had not been filed. On March 13, 2001, respondent filed the documents.

49. The 15th Annual Account came on for hearing on April 23, 2001. Respondent failed to submit to the court his conservator time records for the accounting period. On April 23, 2001, the court wrote to respondent and advised him that the conservator's fees were high and directed respondent to submit time records. The April 23, 2001, court hearing was continued to May 21, 2001.

50. On May 21, 2001, the court convened to review the conservator's time records. Respondent had failed to file the time records as previously directed by the court. On May 21, 2001, the court issued a letter to respondent requesting the time records in one week.

51. Respondent failed to submit the time records as required by the court. The court continued the June 5, 2001, hearing to July 3, 2001. On June 5, 2001, the court provided respondent notice that he was required to submit the time records prior to the July 3, 2001, hearing.

52. On July 3, 2001, a hearing was conducted to consider the 15th Annual Account. The court issued an order on July 12, 2001, approving the 15th Annual Account.

### Mary Jo Kellner

53. On July 22, 1988, respondent was appointed guardian of the person and estate of Mary Jo Kellner. On September

23, 1993, the court issued an order for the examination of the 5th Annual Account to be heard on October 18, 1993. On September 23, 1993, respondent filed the 5th Annual Account with the probate court. On October 18, 1993, the court notified respondent that it had disallowed the 5th Annual Account due to respondent's failure to serve an affidavit of mailing of the Order Fixing Time and Place of Hearing.

54. On August 2, 1994, the court, having never received the affidavit of mailing of the Notice, Personal Well Being Report and Annual Account with categorized vouchers, issued a reminder notice to respondent to file documents by September 2, 1994. Respondent failed to comply with the court's notice.

55. On September 8, 1994, a notice and order to appear was issued to respondent advising him that a citation would be issued for his appearance to show cause why the annual documents had not been filed.

56. Respondent filed the affidavit of mailing for the 5th Annual Account and the 6th Annual Account documents on September 9, 1994. On September 9, 1994, the court issued the Order for Examination of the 5th and 6th Annual Accounts. On November 7, 1994, the court issued two orders allowing the 5th and 6th Annual Accounts respectively.

57. Respondent failed to timely file the 12th Annual Account on or about August 21, 2000. On September 5 and October 9, 2000, the court issued reminder notices to file the 12th Annual Account. On October 10, 2000, the court issued a Notice and order for appearance to show cause why the annual account had not been filed.

58. On November 13, 2000, respondent filed the 12th Annual Account. Respondent failed to file the Affidavit of Service regarding the Notice of Hearing. At the December 18, 2000, hearing, the 12th Annual Account was allowed by the court subject to filing the affidavit of service regarding notice of hearing.

59. On December 18, 2000, the probate court manager wrote respondent a letter advising him that the 12th Annual Account came on for hearing. Due to respondent's failure to file the affidavit of mailing the account would not be allowed. Respondent was further advised that the notice needed to be mailed at least 14 days prior to the hearing. Respondent failed to file the Affidavit of Mailing.

60. On January 22, 2001, the probate court again wrote to respondent requesting the Affidavit of Mailing. Respondent failed to comply with the court's request.

61. A citation was issue[d] to respondent on February 28, 2001, for failure to file the Affidavit of Mailing. Respondent was required to personally appear on April 25, 2001, to show cause why the Affidavit of Mailing had not been filed.

62. Respondent appeared for the April 25, 2001, hearing. Respondent filed the Affidavit of Service on April 30, 2001, over 5 months late.

**Joanne Kueppers**

63. On May 10, 1995, respondent was appointed general conservator of the person and estate of Joanne Kueppers. Respondent failed to timely file the 4th Annual Account on or before June 9, 1999. On June 21 and July 26, 1999, the probate court issued notices to respondent to file the delinquent 4th Annual Account and accompanying documents. On September 9, 1999, the probate court issued respondent a citation to personally appear on September 29, 1999, to show cause why the 4th Annual Account and accompanying documents had not been filed. Respondent was present at the September 29, 1999, [] citation hearing. The court direct-

ed respondent to file the documents in one week. Respondent failed to file the documents until November 24, 1999. Pursuant to order dated February 14, 2000, the 4th Annual Account was allowed.

64. Respondent failed to timely file the 5th Annual Account on or before June 9, 2000. On June 19 and July 24, 2000, the probate court issued notices to respondent to file the delinquent 5th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent failed to timely comply with the court's notices. On August 31, 2000, the probate court issued respondent a citation to personally appear on September 27, 2000, to show cause why the 5th Annual Account and accompanying documents had not been filed. Respondent was present at the September 27, 2000, citation hearing and filed the 5th Annual Account and accompanying documents. Respondent failed to file an Affidavit of Mailing.

65. On October 23, 2000, the Examination of the Account was heard. The probate court allowed the 5th Annual Account subject to respondent's filing the Affidavit of Mailing. The court continued the Examination of the Account to January 22, 2001. Respondent failed to file the Affidavit of Mailing until January 31, 2001. Pursuant to order dated January 31, 2001, the 5th Annual Account was allowed.

**Mary Dorothy Kueppers**

66. On May 10, 1995, respondent was appointed general conservator of the person and estate of Mary Dorothy Kueppers. Respondent failed to timely file the 4th Annual Account on or before June 9, 1999. On June 21 and July 26, 1999, the probate court issued notices to respondent to file the delinquent 4th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent failed to timely comply with the court's notices. On Septem-

ber 14, 1999, the probate court issued respondent a citation to personally appear on October 27, 1999, to show cause why the 4th Annual Account and accompanying documents had not been filed.

67. Respondent failed to appear at the October 27, 1999, [] citation hearing, nor did he file the 4th Annual Account and accompanying documents. Respondent was notified on October 27, 1999, that the citation hearing was continued to November 24, 1999 and that failure to appear at the November 24, 1999, hearing could result in the issuance of a Writ of Attachment for his arrest.

68. On November 24, 1999, the probate court issued an Order for Writ of Attachment due to respondent's failure to appear at the citation hearing. That same day upon receipt of the Writ of Attachment, respondent filed the 4th Annual Account and accompanying documents. On December 2, 1999, the court issued an Order Quashing the Writ of Attachment.

69. Respondent failed to timely file [the] 5th Annual Account on or before June 9, 2000. On June 19 and July 25, 2000, the probate court issued notices to respondent to file the delinquent 5th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent failed to timely comply with the court's notices. On August 31, 2000, the probate court issued respondent a citation to personally appear on September 27, 2000, to show cause why the 5th Annual Account and accompanying documents had, not been filed. Respondent was present at the September 27, 2000, hearing and filed the 5th Annual Account and accompanying documents.

**Dorthea B. Lange**

70. On July 14, 1987, respondent was appointed general conservator of the person and estate of Dorthea B. Lange. Ms.

Lange died on May 3, 2000. Respondent failed to timely file the 13th and Final Annual Accounts on or before August 14, 2000. On August 28 and September 26, 2000, the probate court sent notices to respondent requesting he file the delinquent 13th Annual Account, Personal Well Being Report and Annual Notice of Rights. Respondent failed to comply.

71. On November 9, 2000, the probate court issued respondent a citation to personally appear on November 29, 2000, to show cause why the 13th Annual Account and accompanying documents had not been filed. Respondent was present at the November 29, 2000, hearing and filed the 13th and Final Annual Account and accompanying documents.

### B. Respondent Serves as Attorney for Guardian or Conservator

### Laura J. Medved

72. Adeline Medved (Medved) was appointed conservator of Laura J. Medved on May 30, 1984. Medved retained respondent to represent her. Respondent failed to timely file the 11th Annual Account on June 29, 2002. On July 15 and August 20, 2002, the probate court sent notices to Medved to file the 11th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent failed to comply with the court's notices.

73. On September 25, 2002, the probate court issued a citation requiring Medved to personally appear on October 23, 2002, to show cause why the documents had yet to be filed. Respondent filed the 11th Annual Account on October 3, 2002. Respondent and Medved appeared at the October 23, 2002, citation hearing and filed the other documents at that time. On November 18, 2002, the court issued an order allowing the 11th Annual Account.

### Dawn M. Hassinger

74. On March 28, 1990, the court issued an order appointing Sherry L. Miller (Miller) guardian of Dawn M. Hassinger. Miller retained respondent to represent her. In 1996, respondent failed to timely file the Annual Notice of Rights and Personal Well Being Report. On April 9 and May 20, 1996, the probate court sent reminder notices to Miller requesting the delinquent reports be filed. Respondent failed to file the documents as requested by the court.

75. On July 22, 1996, the probate court issued a citation to Miller to personally appear on August 20, 1996, and show cause why the Annual Notice of Rights and Personal Well Being Report had not been filed. Respondent filed the documents on July 26, 1996.

76. In 1998, respondent failed to timely file the Annual Notice of Rights and Personal Well Being Report. On April 13 and May 19, 1998, the probate court sent reminder notices to Miller to file the Annual Notice of Rights and Personal Well Being Report. Respondent failed to file the documents. On June 30, 1998, the probate court issued a citation to Miller to personally appear [] before the court on July 21, 1998, to show cause why the documents were not filed. Respondent filed the documents on July 6, 1998, and the citation hearing was stricken from the court's calendar.

77. In 2000, respondent failed to file the Annual Notice of Rights and Personal Well Being Report. On April 10 and May 16, 2000, the probate court sent reminder notices to Miller to file the delinquent Personal Well Being Report and Annual Notice of Rights. Respondent failed to file the documents.

78. On June 26, 2000, the probate court issued a citation to Miller to personally

appear on July 26, 2000, and show cause why the Annual Notice of Rights and Personal Well Being Report had not been filed. Respondent filed the documents on July 19, 2000. The citation hearing scheduled for July 26, 2000, was stricken from the court's calendar.

79. In 2002, respondent failed to file the Annual Notice of Rights and Personal Well Being Report. On April 8 and May 14, 2002, the probate court sent reminder notices to Miller to file the delinquent Personal Well Being Report and Annual Notice of Rights.

80. On June 19, 2002, the probate court issued a citation to Miller to personally appear on August 28, 2002, and show cause why the Annual Notice of Rights and Personal Well Being Report had not been filed. On August 28, 2002, respondent and Miller personally appeared at the citation hearing and filed the documents at that time.

### Beatrice A. Moore

81. On November 4, 1992, Valerie Mihok (Mihok) was appointed general conservator of the person and estate of Beatrice A. Moore. Mihok retained respondent to represent her.. Respondent failed to file the 6th Annual Account on or before December 4, 1998. On December 21, 1998, and January 25, 1999, the probate court sent notices to Mihok to file the 6th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent failed to comply with the court's notices.

82. On March 12, 1999, the probate court issued a citation requiring Mihok to personally appear on March 30, 1999, to show cause why the documents had yet to be filed. Respondent appeared at the March 30, 1999, citation hearing without filing the documents. Respondent filed the documents on April 5, 1999. The court allowed the 6th Annual Account pursuant to order dated May 3, 1999.

83. Respondent failed to file the 8th Annual Account on or before December 4, 2000. On December 18, 2000 and January 23, 2001, the probate court sent notices to Mihok to file the 8th Annual Account, Annual Notice of Rights and Personal Well Being Report. Respondent failed to comply with the court's notices. On March 2, 2001, the probate court issued a citation requiring Mihok to personally appear on March 28, 2001, to show cause why the documents had yet to be filed. Respondent filed the 8th Annual Account on March 26, 2001. The court allowed the 8th Annual Account pursuant to order dated May 7, 2001.

### Gary Alan Bayne

84. On March 9, 1982, Gordon K. and Marlene F. Bayne (the Baynes) were appointed co-guardians of the person and estate of Gary Alan Bayne. The Baynes retained respondent to represent them. Respondent failed to timely file the 16th Annual Account. On April 13 and May 19, 1998, the probate court sent notices to the Baynes to file the delinquent 16th Annual Account, Notice of Rights, [and] Personal Well Being Report as required by law. Respondent failed to file the documents. On June 30, 1998, the probate court issued a citation to the Baynes requiring them to personally appear before the court on July 21, 1998, and show cause why the documents had yet to be filed.

85. On July 6, 1998, respondent filed the 16th Annual Account and accompanying documents. The July 21, 1998, citation hearing was stricken from the court's calendar. Pursuant to court order dated August 5, 1998, the 16th Annual Account was allowed.

86. Respondent failed to timely file the 18th Annual Account and accompanying

documents on or before April 8, 2000. On April 17 and May 23, 2000, the probate court sent notices to the Baynes requesting that the delinquent 18th Annual Account, Notice of Rights and Personal Well Being Report be filed. Respondent failed to file the documents. On July 5, 2000, the probate court issued a citation to the Baynes requiring them to personally appear before the court on August 23, 2000, and show cause why the documents had yet to be filed.

87. On August 21, 2000, respondent filed the 18th Annual Account and accompanying documents. The August 23, 2000, citation hearing was stricken from the court's calendar. The 18th Annual Account was allowed pursuant to court order dated September 20, 2000.

**Anthony Jay Condon**

88. On January 25, 1989, Everette and Kathleen Condon (the Condons) were appointed co-guardians of the person and estate of Anthony Jay Condon. The Condons retained respondent to represent them.

89. Respondent failed to timely file the 11th Annual Account on or before February 24, 2000. On April 10 and May 16, 2000, the probate court issued notices to the Condons to file the 11th Annual Account, Personal Well Being Report and Annual Notice of Rights. Respondent failed to file the documents.

90. On June 26, 2000, the probate court issued a citation to the Condons requiring them to appear on July 26, 2000, and show cause why the documents had yet to be filed.

91. On July 18, 2000, respondent filed the 11th Annual Account and accompanying documents. On July 24, 2000, after a telephone call from respondent, the July 26, 2000, citation hearing was stricken from the probate court's calendar. Pursuant to court order dated August 16, 2000, the 11th Annual Account was allowed.

92. Respondent's pattern of failing to timely file probate annual reports, affidavits of mailing and receipts with the probate court, and failing to promptly comply with probate court orders violated Rules 1.3, 3.4(c) and 8.4(d), Minnesota Rules of Professional Conduct (MRPC).

### SECOND COUNT

93. On April 23, 2003, charges of unprofessional conduct, notice of pre-hearing and notice of panel assignment were mailed to respondent at his last known address.

94. The notice of pre-hearing meeting informed respondent that a pre-hearing meeting concerning the charges of unprofessional conduct would be held at 10:00 a.m. on May 13, 2003, at the Office of Lawyers Professional Responsibility, 1500 Landmark Towers, 345 St. Peter Street, St. Paul, MN 55102. Pursuant to Rules 9(b) and (e), RLPR, an attorney must serve an answer to the charges and appear for [the] pre-hearing meeting.

95. Respondent failed to serve an answer or appear for the pre-hearing meeting or otherwise respond to the charges of unprofessional conduct and notice of pre-hearing meeting.

96. Respondent's conduct in failing to cooperate with required elements of the disciplinary proceedings violated Rule 8.1(a)(3), MRPC, and Rule 25, RLPR.